ODOM, Justice.
 

 The bill of information filed against these defendants charges that they “unlawfully did break and enter, in the night time, the American Hat Company, located at 810 Texas Avenue, City of Shreveport, Louisiana, with the intent to commit larceny.” The jury impaneled to try them returned the following verdict: “We, the jury, find the defendants-guilty of entering in the night time, without breaking.”
 

 From this verdict and a judgment sentencing them to hard labor, defendants prosecute this appeal.
 

 The case is brought upon three bills of exception. Bill No. 1 was reserved to the ruling of the court permitting the state to offer in evidence the alleged confessions of the defendants. The objection was that the state had failed to show that the confessions were free and voluntary.
 

 
 *615
 
 The trial judge, in his per curiam to this bill, says:
 

 “The confessions were shown to have been made voluntarily, freely and without threat or promise of reward or immunity.”
 

 The testimony introduced by the state to show that the confessions were free and voluntary is not in the record. We must therefore accept the statement of the trial judge that the confessions were admissible.
 

 After conviction and before sentence, counsel for defendants filed a motion in arrest of judgment. This motion was overruled and bill No. 2 was reserved.
 

 The basis of this motion is that the bill of information on which defendants were prosecuted and convicted .charges no crime known to the laws of this state.
 

 The charge made is that defendants broke and entered “The American Hat Company, located at 810 Texas Avenue, City of Shreveport, .Louisiana, with intent to commit larceny.”
 

 The crime intended to be charged is that denounced by section 852 of the Revised Statutes, as amended by Act No. 15 of 1912, p. 21, which reads as follows:
 

 “Whoever with intent to rob, steal, commit a rape or any other crime, shall in the night time break and enter into any shop, store, office, court-house, church, barn, rice or sugar house, cotton gin, warehouse, bank, theatre building or dressing room therewith connected, or any outhouse appurtenant to a dwelling house, plantation, or any vessel, or having with such felonious intent entered, shall in the night time break any such house, building or vessel * * * on conviction shall suffer imprisonment at hard labor not exceeding ten years.”
 

 It is not charged in the bill of information that defendants broke and entered any shop, store, office, warehouse, or any other building or structure, but that they broke and entered “The American Hat Company,” which is not a building or structure of any kind.
 

 Manifestly, the bill of information charges no crime known to our law. There are four separate and distinct sections of the Revised Statutes denouncing burglaries. Section 850 makes it a capital crime to break and enter a “dwelling house” under certain conditions. Section 851 makes it a crime of less magnitude to break and enter a “dwelling house” without being armed with a dangerous weapon, etc. Section 852, quoted above in full, makes it a crime to break and enter any “shop, store, office, court-house, church, barn, rice or sugar house, cotton gin, warehouse, bank, theatre building or dressing room therewith connected, or any outhouse appurtenant to a dwelling house, plantation, or any vessel” with the felonious intent to commit a crime.
 

 Section 854 makes-it a crime to enter in the nighttime without breaking or in the daytime to break and enter “any dwelling house, or out house thereto adjoining and occupied therewith” with intent to commit a crime.
 

 Act No. 119 of 1920, p. 170, is a separate act defining the crime of burglary with explosives and fixing the punishment therefor. It provides (section 1) that any person, who with intent to commit a crime “breaks and enters * * * any building,” and opens or attempts to open any “vault, safe or other se
 
 *617
 
 cure place” by use of an explosive, shall be guilty of burglary with explosives.
 

 Article 235 of the Code of Criminal Procedure permits the use of short forms of indictments and bills of information, and, as illustrative of the form which may be used in burglary charges, the following is given:
 

 “Burglary — A. B. committed
 
 burglary of the house
 
 of C. D. armed with a dangerous weapon. A. B.
 
 brolce and entered the dwelling
 
 of C. D. with intent to commit larceny, or murder, or robbery therein (as the ease may be), armed or not armed with a dangerous weapon (as the case may be).” (Italics are the writer’s.)
 

 We have referred to these sections of the Kevised Statutes and the Code merely to show that, in every instance where the crime of burglary is denounced or referred to, it is of the essence of that crime that there be a breaking and entering, and, in some cases, the entering, of some
 
 place, house,
 
 or
 
 structure.
 

 Burglary in Louisiana is a statutory crime, and, in order to charge that crime, it is necessary to follow the language of the statute under which the charge is made. “Burglary” in its general sense means the breaking and entering into the house of another with intent to commit a crime. To constitute the crime of burglary, there-must be a breaking and entering into some kind of a house, structure, or place as shown by the language of the statutes.
 

 In State v. Jackson, 43 La. Ann. 183, 8 So. 440, there was a motion in arrest of judgment based on the ground that the indictment charged no crime, and the Chief Justice said for the court:
 

 “The description of the offense must be technically exact. The special matter of the whole fact should be set forth in the indictment, with such certainty that the offense may judicially appear to the court. Wharton Criminal Law, 285, 287.
 

 “It is settled by a long line of precedents, resting on principle, that, in the prosecution for the commission of a statutory offense, the words of the statute, or others of fully equivalent import, should be employed.”
 

 In the recent case of State v. Williams, 173 La. 1, 136 So. 68, 70, a similar objection was raised, and the author of the opinion said:
 

 “We approach the consideration of these reasons impressed with the fact that penal laws must be strictly construed; that, in Louisiana, all crimes are statutory, and the determination of what acts constitute crimes are purely legislative functions which cannot be delegated to, or exercised by, the judiciary.”
 

 It follows, therefore, that an indictment or information which charges that an individual did break and enter a “company” is fatally defective; there being no charge that any house, structure, or place was broken into and entered.
 

 It is suggested that the clause “located at 810 Texas Avenue, Shreveport, Louisiana,” which follows the words “American Hat Company,” sufficiently describes a place or the premises burglarized. The suggestion is untenable. That clause merely locates the place
 
 *619
 
 where the “American Hat Company” was doing business, and is not equivalent to a charge that defendants burglarized the premises or a house located at 810 Texas avenue.
 

 In State v. White et al., 174 La. 355, 140 So. 501, the defendant was prosecuted under a bill of information which charged that he “did willfully, unlawfully, and feloniously enter in the nighttime the
 
 poultry farm,
 
 of one Julius Quinn, with the felonious intent
 
 to
 
 steal, and did then and there take, steal, and carry away 150 leghorn chickens, of the value of $150.” (Italics ours.) On the theory that the prosecution was for burglary or entering in the nighttime, a crime denounced by section 854 of the Revised Statutes, as amended, the case was tried by a jury of twelve, and a verdict of guilty as charged was rendered. The defendant -was sentenced to hard labor for five years. The section of the Revised Statutes above referred to, as amended by Act No. 20 of 1926, provides that whoever, with intent to commit certain designated crimes, shall in the nighttime enter without breaking, or in the daytime “break and enter any dwelling house or out house thereto adjoining and occupied therewith, or any shop, store, office, courthouse,” etc., shall on conviction be sentenced to hard labor not exceeding five years, and fined not exceeding $1,000.
 

 The defendant, through counsel, filed in this court an assignment of errors, charging that the bill of information “did not charge the crime of burglary or entering in the night time,” and therefore the case was not triable by a jury of twelve, and it was held that the assignment was good. The reason given by the court was:
 

 “The statute (Rev. Stat. § 854, as amended) on which the prosecution was founded, and which the judge quoted in his charge to the jury, does not make it a crime to enter a
 
 farm
 
 in the nighttime with intent to steal or to commit any other crime. To constitute the crime denounced by the statute the entry must be of a building, house, tent, or vessel.” (Italics ours.)
 

 The verdict in this case was found upon an indictment so defective that it charged no crime, and is therefore of no effect. Code Cr. Proc. art. 405. The judge therefore had no authority or power to sentence the accused. Not having been charged with any crime, they could be convicted of none, because the verdict must be responsive to the indictment. No one can be convicted of an offense not charged in the indictment. Code Cr. Proc. art. 405. The province of the motion in arrest of judgment is to assign some error patent on the face of the record or some defect so radical as to preclude judgment and sentence. Code Cr. Proc. art. 517. See, also, Marr’s Criminal Jurisprudence, § 495, and the numerous authorities cited.
 

 The purpose of the motion in arrest of judgment and its effect, when well founded, is to strike down all proceedings previously had. It follows, therefore, necessarily that the motion to arrest the judgment in this case •was well founded and should have been sustained.
 

 Counsel for the state contend that, even if it be held that the indictment charges no crime known to our law, the defendants waived their right to avail themselves of the motion in arrest by going to trial without de
 
 *621
 
 murring and without moving to quash the bill. They base their contention principally on article 284 of the Code of Criminal Procedure, which reads as follows:
 

 “Every objection to any indictment shall be taken by demurrer or by motion to quash such indictment, before arraignment; and every court before which any such objection shall be taken for any formal defect, may, if it be thought necessary, cause the indictment to be forthwith amended in such particular, and thereupon the trial shall proceed as if no defect had appeared.”
 

 This article of the Code is substantially a restatement of the jurisprudence of this state .as it existed prior to the adoption of the Code. In Marr’s Criminal Jurisprudence (1st Ed.) p. 429, the rule, supported by authority, is stated as follows:
 

 “Every objection to an indictment
 
 for any formal defect
 
 apparent on the face thereof must be taken by demurrer or motion to quash before the jury is sworn, and not after-wards, and therefore, not by motion in arrest.” (Italics ours.)
 

 The cases cited in support of this rule all follow the law as set out in Rev. St. § 1064, which provides that:
 

 “Every objection to any indictment for any
 
 formal defect
 
 apparent on the face thereof, shall be taken by demurrer or motion to quash such indictment, before the jury shall be sworn, and not afterwards.” (Italics ours.)
 

 Under section 1064, Rev. St., and the jurisprudence which followed it, an accused person was not deprived of the right to have the court consider and pass upon substantial defects appearing upon the face of the indictment, on motion in arrest of judgment, even though no demurrer or motion to quash was filed in limine.
 

 In State v. Jackson, supra, where the indictment was declared fatally defective and where no motion to quash it had been filed, the court said:.
 

 “It is settled that, whether the facts in an indictment are properly alleged or constitute a crime, may be inquired into on a motion in arrest” — citing Waterman’s Digest, 363. See State v. Robinson, 104 La. 224, 28 So. 1002;. State v. Lubin, 42 La. Ann. 79, 7 So. 68.
 

 But it is suggested that this general rale was abrogated by the adoption of the Code and that now all objections to the indictment, whether relating to form or substance, must be urged in limine either by demurrer or motion to quash, and, if not then urged, such defects cannot be taken advantage of by motion in arrest.
 

 In support of the contention, it is pointed out that article 284 of the Code is broader than section 1064 of the Revised Statutes, in that the article of the Code provides that “every objection to any indictment shall be taken by demurrer or by motion to quash such indictment, before the arraignment,” whereas the Revised Statutes provide that “every objection to any indictment for any
 
 formal defect
 
 apparent on the face thereof, shall be taken by demurrer or motion to quash,” etc.; the words “formal defect” being left out of the Code. (Italics ours.)
 

 The contention lacks foundation for two reasons. The first is that, if it had been intended by the adoption of the Code to deprive an accused person of the right to quash the
 
 *623
 
 proceedings by motion in arrest of judgment, because of his failure to demur or to file a motion to quash in limine, there would not have been put into the Code those articles under title 26, which relate to “The motion in arrest of judgment.”
 

 Under the above title and caption, there are four articles, 517, 518, 519, and 520. Article 517 reads as follows:
 

 “A motion in arrest of judgment lies only for a
 
 substantial
 
 defect, patent upon the face of the record.” (Italics ours.)
 

 And article 518 provides that:
 

 “No defect that is merely
 
 formal,
 
 or cured by verdict, or that can not be ascertained without an examination of the evidence, is good ground for arresting judgment.” (Italics ours.)
 

 The jurisprudence prior to the adoption of the Code was uniform to. the effect that a motion in arrest “lies only for a
 
 substantial defeat,
 
 .patent upon the face of the record,” as now set out-in article 517 of the Code, and that “no defect, that .is merely
 
 formal
 
 or cured by verdict,” as stated in article 518, is good ground for arresting judgment. (All italics ours.)
 

 It is clear enough that the rules established by the court relating to motions in arrest of judgment were almost literally read into the Code. To say the least, they were not abrogated, but specifically retained. If it had been intended to cut an accused party off from availing himself of the benefits of the motion in' arrest merely because he failed to demur or object to the indictment in limine where the indictment is substantially defective. the inclusion in the Code of those provisions relating to motions in arrest was a vain and useless formality, tending only to confuse.
 

 The second reason is that article 284, when read as a whole, shows that the “objection to any indictment,” which must be taken advantage in limine or else be considered as waived, has reference only to “formal defects” and not to .“substantial defects” in the indictment.
 

 Following the first paragraph of the article which says that “every objection to any indictment shall be taken by demurrer or by motion to quash] such indictment, before the arraignment,” is the clause which must be read and construed with the above and is explanatory of the first, to wit, “and every court before which
 
 any such objection
 
 shall be taken for any
 
 formal defect,
 
 may, if it be thought necessary, cause the indictment to be forthwith
 
 amended
 
 in such particular, and thereupon the trial shall proceed as if no defect had appeared.” (Italics ours.)
 

 The expression “any such objection” in the second clause relates to the “objections” referred to in the first clause, and, according to the. language of the second clause, are such, objections as “shall be taken for
 
 any formal' defect”
 
 in the indictment. (Italics ours.)
 

 Counsel cite the case of State v. Howerton, 173 La. 788, 138 So. 668, where it was. held that after conviction “on evidence unobjected to, objection that indictment did not charge act aggravating offense with same particularity as completed crime comes too. late.”
 

 That case is readily distinguishable from this one. There the indictment was framed.
 
 *625
 
 in the exact language of the statute but defendant contended that it was defective “for failure to name the person he is charged with attempting to rob and to describe the property he attempted to rob him of,” which was a defect in form but not of substance. The court found also that “the verdict of the jury was responsive to the charge laid in the indictment.”
 

 It is suggested that the defect in the information was cured by the verdict. That might be true if there had not been omitted from the indictment an “essential averment.”
 

 Article 418 of the Code of Criminal Procedure reads as follows:
 

 “All averments imperfectly stated in the indictment are cured by verdict, but the omission from the indictment of any essential averment constitutes an incurable defect.”
 

 There was omitted from the information in this case the “essential averment” that defendants burglarized a building or structure. That omission was fatal, and the doctrine of “aider by verdict” does not apply.
 

 For the reasons assigned, the verdict and sentence are set aside, and it is ordered that defendants be discharged; this ruling not to prejudice the right of the state to proceed against defendants under proper information or indictment.
 

 ROGERS, J., dissents, being of the opinion that the defendant, by failing to object in limine, waived his right to attach the indictment for the alleged defect therein.
 

 BRUNOT, J., dissents.