HAMITER, Justice.
 

 James Clark Rowan, the defendant herein, is appealing from his conviction and sentence (nine years in the State Penitentiary at hard labor) on a charge of simple burglary of a store belonging to J. J. Mayeaux and located in Evangeline Parish. For a reversal he relies on six perfected bills of exceptions.
 

 Bills Numbers 1 and 3 will be discussed first and somewhat together inasmuch as both relate to the admissibility into evidence of a pistol found in and taken from the automobile of the defendant. Assertedly, the gun had been stolen during the course of the burglary with which he was charged.
 

 Prior to trial the accused filed a motion to suppress, its purpose being to preclude the state from introducing the pistol into evidence. The motion was based on the decision in Mapp v. Ohio, 367 U.S. 743, 81 S.Ct. 1684, 6 L.Ed.2d 1081.
 

 
 *41
 
 The district judge refused to consider the motion at that time; he deferred his ruling thereon until the cause came on for trial. To the refusal the first bill was reserved.
 

 After the jury had been selected and ■sworn the judge retired it and, during the-,, retirement, he heard testimony on the ques- ' tion of the admissibility of the pistol that had been raised by the motion to suppress. Following the hearing he overruled the motion, holding that the objection of the ■defendant to the evidence was groundless. Bill Number 3 was taken to that ruling. (In passing we note that the defendant urged no objection when the state later offered the pistol in evidence in the presence of the jury.)
 

 In this court the defendant argues that, with reference to bill Number 1, the judge’s refusal to pass upon his motion to suppress prior to trial was reversible error. 'The bill is without merit.
 

 True, in recent years some Of the district judges of this state have entertained .and ruled on motions of that nature before trial. (We understand that the procedure has been borrowed from that which is practiced in the federal courts, although our statutory law makes no provision for a motion to suppress.) But in each of the cases •considered by us in which this has been done it did not appear from the record that the state had objected to the judge’s action. ■Consequently, we have not yet been called upon to determine whether such a motion is cognizable under our procedural laws. In 'any event no prejudice results when the judge merely defers action on the motion to suppress until the occurrence of the actual trial, at which time he (out of the presence of the jury) hears testimony on the question of the evidence’s admissibility — as was done in the instant case.
 

 In bill Number 3 the accused urges that the pistol was obtained in the course of an unauthorized, and hence illegal, search of his automobile; and that under the decision of Mapp v. Ohio, supra, it could not be used as evidence.
 

 The facts surrounding the state’s acquisition of the gun, shown on the hearing of the motion to suppress, are as follows: The accused ivas arrested on October 19, 1962, at about 1:00 or 1:30 p. m., in Hattiesburg, Mississippi, on suspicion and investigation of a burglary (which had occurred in Hattiesburg) and for failure to possess a selective service card. During the course of his interrogation by police officers he stated that he had a Studebaker automobile. No description of the car or of its then location was given.
 

 Sergeant Arlen Moulds of the Hattiesburg Police Department came on duty at 3 :00 of the same afternoon, and immediately thereafter he began to look for the car. About 10:00 or 10:30 that night he noted a Studebaker automobile, bearing a Texas
 
 *43
 
 license tag, parked at an expired meter in a commercial area of the city, at which time all business houses were closed. It was the only car in the block, the doors thereof were not locked, and the key was in the ignition. He saw no one around to whom the vehicle might belong, and his examination of the glove compartment revealed nothing to identify the owner.
 

 Thereupon, such officer drove the automobile to the police station, and there he made a complete search of its interior which disclosed the pistol under the front seat. Later, the defendant identified the car as belonging to him and admitted his knowing that the pistol was in it; but he stated that a friend of his had taken the gun in a burglary and had put it there.
 

 Sergeant Moulds further testified that in carrying the Studebaker to the station and searching it he did so in a routine manner, performing as he would have done in any case involving an abandoned automobile. Asked on cross examination if he had obtained and served a search warrant, he answered that he had not and that he did not know at the time that it was Rowan’s car.
 

 Detective Sergeant Burl Pitkins, also of the Hattiesburg Police Department, corroborated Moulds’ testimony that the transporting and examining of the automobile was done in the routine fashion of handling all similar situations. This is shown by the following series of questions and answers :
 

 “Q. What does your department do, you and your fellow officers, with respect to an automobile that is parked late at night in a business district without any apparent business there, or without any owners, without any identification, with the keys on it, what is the general routine of your department?
 

 “
 
 * * * * * ^
 

 “A. We carry them down to the station and take the keys out of them and give them to the desk sergeant for safe keeping and check a car out if it is an out of state car, and check it out.
 

 “Q. Now what do you mean by ‘check it out’ ?
 

 “A. I mean we run a check on it and see if it has been stolen somewhere or another.
 

 “Q. Do you look for any identification?
 

 “A. Yes, we search the car and see if we can find any identification, as to who it belonged to.”
 

 We recognize the force and effect of the decision in Mapp v. Ohio, supra, on the question of the admissibility in state courts of evidence obtained in violation of the Fourth Amendment of the Constitution of the United States as influenced by the Fourteenth Amendment. But as we said in
 
 *45
 
 State v. Calascione, 243 La. 993, 149 So.2d 417, when considering the propriety of introducing certain marijuana cigarettes in a criminal proceeding, “ * * * The fact that the fifteen marijuana cigarettes were secured without the benefit of a search warrant does not necessarily constitute them as being illegally obtained and therefore inadmissible in evidence as it is an
 
 unreasonable
 
 search and seizure of property that • is prohibited by the Fourth Amendment to the United States Constitution and Article 1, Section 7 of this state’s Constitution.”
 

 In Ker et al. v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed. 726, the United States Supreme Court commented on the effect of the Mapp decision as follows: “ * * * Mapp did not attempt the impossible task of laying down a ‘fixed formula’ for the application in specific cases of the constitutional prohibition against unreasonable searches and seizures; it recognized that we would be ‘met with “recurring questions of the reasonableness of searches” ’ and that, ‘at any rate, “[reasonableness is in the first instance for the [trial court] to determine,” ’ id., 367 U.S., at 653, 81 S.Ct. at 1690, 6 L.Ed.2d 1081, thus indicating that the usual weight be given to findings of trial courts.” It further noted that “[t]here is no formula for the determination of reasonableness. Ea'ch case is to be decided on its own facts and circumstances.” Also, that “ * * * Significant in the Elkins holding [Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669] is the statement, apposite here, that ‘it can fairly be said that in applying the Fourth Amendment this Court has seldom shown itself unaware of the practical demands of effective criminal investigation and law enforcement.’ ”
 

 The question to be determined, hence, is whether the removal of defendant’s automobile to the police station and its subsequent search there were reasonable under the circumstances as outlined above. We think that they we're. As already shown the car bore an out of state license, was found unattended with the key in the ignition in a closed and deserted business section of the city at a late hour of the night, and a cursory examination there failed to reveal its owner’s identity. Bearing in mind the fact that police officers today must be (and usually are) ever on the alert to watch for stolen automobiles, we are of the opinion that the conditions under which Sergeant Moulds discovered the vehicle in question suggested the strong probability that it was an abandoned and stolen car, fully justifying his subsequent action of transporting it to the station for a complete inspection. And it follows that his conduct did not constitute an unreasonable invasion of privacy of the automobile’s owner. To hold otherwise would unduly and unjustifiably hamper our law enforcement officers in carrying on their duties in the protection of the law abiding public.
 

 
 *47
 
 Since the search which led to the discovery of the pistol was not unreasonable or illegal, no error was committed by the district judge in permitting the pistol to be introduced into evidence. Consequently, there is no merit in bill Number 3.
 

 Bill Number 2 was reserved to the court’s refusal to excuse for Cause prospective juror Murray Ardoin, the defendant urging that the voir dire examination indicated that he was prejudiced in that he believed the accused to be guilty. The objection is based solely on the following:
 

 “Q.
 
 Mr. Ardoin, do you feel deep down that this man must have done something wrong in order for him to be here on trial today?
 

 “A.
 
 Well, I guess he had to do something wrong to be here on trial.”
 

 After this question and answer and the challenge by defendant, the court instructed the prospective juror as to the presumption of innocence, the burden of proof, and the reasonable doubt in criminal cases. He was then questioned at length by the judge and defense counsel (his entire examination is in the record). This interrogation clearly revealed and demonstrated that he could and would give no weight to the filed charge, afford the defendant the presumption of innocence to which he is entitled, and decide the case solely and only on the evidence adduced.
 

 In State v. Jones, 175 La. 1014, 144 So. 899, we observed: “ * * * The qualifications of a person to serve on the jury in any case must be determined from the whole o£ the voir dire examination, and not from excerpts of answers which, standing alone, would disqualify the person for jury service.” The language was approved in State v. Brazile, 234 La. 145, 99 So.2d 62. See also State v. Zeigler, 184 La. 829, 167 So. 456; State v. Futch, 216 La. 857, 44 So.2d 892; State v. McDonald, 224 La. 555, 70 So.2d 123; and State v. Davis, 237 La. 577, 111 So.2d 778.
 

 Defendant’s objection to the juror’s qualification was without substance and, accordingly, the judge correctly refused to permit the challenge for cause.
 

 Following the jury’s verdict the accused filed a motion in arrest of judgment in which he alleged that the bill of information was fatally defective in that it failed to state whether the store burglarized was a structure, water craft or movable and to set forth to whom it belonged. Bill Number 4 was reserved to the court’s overruling of the motion. (We pretermit the question of whether such an attack on the information was timely, the state contending that it should have been made before trial, because we find that the bill of exceptions itself is without effect.)
 

 LRS 14:62, which defines the crime of simple burglary, provides: “Simple bur
 
 *49
 
 glary is the unauthorized entering of any vehicle, water craft, dwelling or other structure, movable or immovable, with the intent to commit any forcible felony or any theft therein, other than as set forth in Article 60.
 

 “Whoever commits the crime of simple burglary shall be imprisoned at hard labor for not more than nine years.” The information contained in the record herein charg"ed that the defendant “did wilfully, unlawfully and feloniously commit the crime of Simple Burglary by breaking and entering the store of J. J. Mayeaux and committing a theft therein.”
 

 In support of his motion in arrest the accused cites and relies on State v. Broussard, 233 La. 866, 98 So.2d 218. We do not find that it is controlling here. Therein the defendant was charged with having committed “simply burglary of Cagnina’s Bar, in the City of Crowley * * The holding was that the bill of information fell short of the requirements of the law since it “failed to describe or particularize the houseboat ‘or other structure, water craft, movable as the case may be’ purportedly unlawfully entered, and to specify or designate to whom it belonged *
 
 *
 
 * In so concluding we followed the reasoning of State v. McDonald et al., 178 La. 612, 152 So. 308, that it is the essence of the crime of burglary that there be an illegal entering of
 
 some
 
 place,
 
 house or structure,
 
 and that “The American Hat Company” was not a place, house or structure. In the instant case, on the other hand, the information recites that the accused did wilfully, unlawfully and feloniously break and enter the “store of J. J. Mayeaux”. Clearly this recitation connotes that
 
 a place or stnicture
 
 was illegally entered, and that it was owned by J. J. Mayeaux.
 

 Bill Number 5 was taken to the court’s overruling of defendant’s motion for a new trial, and bill Number 6 was reserved to a second motion for a new trial filed after sentence. Neither bill was discussed in this court by the defendant in his brief or in oral argument.
 

 The original motion for a new trial is not contained in the record; however, the bill taken to its overruling states that the said motion was based upon the ground that the verdict of the jury was contrary to the law and the evidence. Of course, this presents nothing for our review.
 

 In the second application for a new trial the defendant urged the bills previously reserved by him (those not abandoned are discussed and passed upon above) and also that the sentence imposed was contrary to the law and the evidence. The invalidity of a sentence does not affect the verdict so as to entitle a defendant to a new trial. State v. Blakeney, 164 La. 669, 114 So. 588; State v. Johnson, 220 La. 64, 55 So.2d 782.
 
 *51
 
 Nevertheless, the defendant has nowhere stated in what manner the sentence was illegal.
 

 Bills Numbers 5 and 6 are, therefore, without merit.
 

 For the reasons assigned the conviction and sentence are affirmed.