225 So.2d 201

**STATE of Louisiana**

**v.**

**Shirley WRIGHT and Lionel Triplett.**

**No. 49575.**

June 27, 1969.

Bryant W. Conway, Baker, Airhart & Copenhaver, Harris D. Copenhaver, Jr., Baton Rouge, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Cyrus J. Greco, Asst. Dist. Atty., for appellee.

SUMMERS, Justice.

In this prosecution for simple burglary the defendants Shirley Wright and Lionel Triplett were jointly tried by a jury, found guilty and sentenced to serve terms of eight and five years in the penitentiary, respectively. Six bills of exceptions were reserved to rulings of the District Court during the course of the proceeding upon which defendants rely to support this appeal.

Bill No. 1 is not argued separately, but we are referred to the argument made in support of Bill No. 6 for defendants' position on this bill.

### BILL NO. 2

In a bill of information for burglary in the short form, the District Attorney charged that the accused " * * * feloniously did commit simple burglary of Rinaudo's Red and White Grocery, located at 2532 Government Street, the property of Joseph Rinaudo * * * " To this bill of information the accused filed a motion for a bill of particulars in which they sought to ascertain: (1) Whether the accused was charged with a forcible felony or theft, the nature of the alleged offense and, if a theft, the manner of the appropriation, (2) whether the accused is charged as a principal or with aiding and abetting or counseling or procuring another to commit the crime, and (3) the names of the witnesses.[1]

The District Attorney answered that the charge was neither a forcible felony nor a theft but a charge of simple burglary, and the State would introduce evidence to show that the accused were principals to the act of entering a structure, without authority, with the intent to commit a theft therein. Although refusing to answer the remaining questions in the motion for bill of particulars, the District Attorney submitted his entire file on the case to counsel for the defendants for their information. The Court refused to compel the District Attorney to do more, and the defense reserved and later perfected this bill.

 When the accused is informed of the nature and cause of the accusation against him, the constitutional requirement is met. La.Const. art. 1, § 10 (1921). The

---

1. Although this motion was made on behalf of the defendant Shirley Wright, we shall treat all of the objections and the bills reserved as though they were made for both defendants as the law requires us to do. La.Code Crim.Proc. art. 842.

bill of particulars is a legislative implementation of this constitutional right. It is designed to permit the accused to obtain further information, in a proper case, regarding what the State intends to prove, in order that, in fairness, the accused may more properly defend himself But the bill of particulars cannot be employed in a fishing expedition for a recital of the details of the State's evidence, nor used as a device to harass the State by demands for nonessential details. Requiring compliance with the motion is largely discretionary with the trial judge. La.Code Crim.Proc. art. 484 and Comments.

█ "Simple burglary is the unauthorized entering of any vehicle, water craft, dwelling or other structure, movable or immovable, with the intent to commit any forcible felony or any theft therein * * *." La.R.S. 14:62. The bill of information filed in this prosecution informed the defendant of the date and place where the crime was committed, the owner of the place burglarized and also set forth that the accused intended to commit a theft therein. The answer to the motion for a bill of particulars further supplemented this information by making it clear to the defendants that they were only charged with simple burglary for entering a structure without authority, with intent to commit a theft therein. Under these circumstances, it was proper to deny the request that the State furnish evidence of the particular manner in which the crime was committed. State v. Hopper, 251 La. 77, 203 So.2d 222 (1967); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967); State v. Gonzales, 173 La. 947, 139 So. 15 (1932).

In arguing that the State should be compelled to furnish the defendant with a list of its witnesses who would testify against him in advance of trial, defense counsel cite Section 9 of Article I of the Louisiana Constitution of 1921, we assume, for the proposition that the accused in every instance shall have the right to be confronted with the witnesses against him. Counsel refer, moreover, to the imbalance which exists between the facilities of the State which support the prosecution and the meager resources available to an accused to support the argument that the defense should have an opportunity to speak to the State's witnesses in advance. Without this right, it is said, the constitutional guarantee of confrontation is meaningless, because facing a witness for the first time at the trial gives the defense no fair opportunity to rebut the testimony against him, which often comes as a surprise to counsel. See Semerjian, "The Right of Confrontation", 55 ABA Jo. 152 (1969).

██ Historically and in our jurisprudence, the right of confrontation occupies the status of a paramount and fundamental right essential to a fair trial. It is a substantial, substantive and valuable right which assures the accused that he shall

have the opportunity to be confronted by the witnesses against him and be given the opportunity to cross-examine them at the trial. Unless the evidence is presented in this manner, it cannot lead to conviction. For confrontation enables the judge and jury to evaluate the testimony of witnesses by their deportment, and the witnesses thus confronted are persuaded to be truthful. La.Code Crim.P. art. 831 et seq.; State v. Bertin, 24 La.Ann. 46 (1872); 23 C.J.S. Criminal Law § 999; 21 Am.Jur.2d, Criminal Law Sec. 333. See dissents in State v. Hopper, 253 La. 439, 218 So.2d 551, 559 (1969). None of these rights are denied the defendants by refusing a list of the State's witnesses in advance of trial. The confrontation contemplated by the constitution is confrontation at the trial itself. We have never understood this constitutional right to have a different meaning. To depart from this long established rule of law would involve such far-reaching changes in our established concept of the criminal trial that the Legislature should act if action is indicated.

The correction of the imbalance between the State and the accused is also a matter which, in the absence of a denial of constitutional rights, more properly addresses itself to the Legislature.

Accordingly, we find no merit in Bill No. 2.

## BILL NO. 3

At approximately 3:10 on the morning of November 24, 1966 Officers Wayne Spina and M. C. Quebedeaux, patrolmen of the Baton Rouge City Police, received a radio dispatch to proceed to Rinaudo's Red and White Grocery at 2523 Government Street. In five minutes they were at the address where they found the glass portion of the front door had been broken by a large granite stone lying inside the building. They radioed headquarters to notify the owner of the store and proceeded with their investigation.

Shortly thereafter the newspaper delivery man, who had first informed police headquarters of the burglary, drove up in a small van truck and told Spina and Quebedeaux that the burglar alarm at Cohn-Turner's store was going off. The police shift captain and Officer Rothman also arrived about this time, the latter with the defendant Triplett in custody and handcuffed. These two officers remained at Rinaudo's Grocery while Spina and Quebedeaux set out to check Cohn-Turner's. En route they saw the defendant Wright walking on the street and stopped to question him. They asked him where he was coming from; and, when his replies appeared to be evasive, they took him into custody, placed him in the police car and proceeded to Cohn-Turner's. After checking at Cohn-

Turner's the officers returned to Rinaudo's Grocery on Government Street.

At Rinaudo's Spina advised Wright, who was in his car, of his "Civil Rights", as he termed it—that is, that he need not answer any questions and that he had the right to a lawyer. In reply Wright stated that he already had a lawyer. When Spina offered to contact the lawyer for him, he declined the offer.

Spina then went over to the other car where Triplett was being held and also advised him that he had the right not to answer any questions, that he had the right to a lawyer at any time, and he didn't have to answer questions unless his lawyer was present. Triplett likewise informed Spina that he had a lawyer, and when Spina offered to contact headquarters over the car radio to advise the lawyer, Triplett declined the offer, nor did Triplett ask to get out of the car to make the call. He proceeded thereafter to voluntarily make the statement in controversy to Spina and Quebedeaux, while Rothman was standing nearby in the door of Rinaudo's Grocery.

Triplett told the officers present that he and Wright burglarized the store, and then went to the Westmoreland Shopping Center where they "split up" what they had taken. They then decided to break into Cohn-Turner's, but when they broke the glass on the window the alarm went off and each ran in a different direction. They were

apprehended shortly thereafter by Officers Rothman, Spina and Quebedeaux. Wright made no inculpatory statement.

Later at the trial Spina was permitted, over objections of Wright's counsel, to relate the confession of Triplett implicating Wright. The trial judge did, however, instruct the jury that the narration of Triplett's confession implicating Wright could only be considered against Triplett and it could not be considered against Wright.

The trial took place on February 3, 1967, and at that time the inculpatory declaration, made by one of the defendants in a joint trial after the termination of the offense, could be used against the declarant under appropriate instructions to the jury protecting the other defendant. This was the rule as announced and affirmed in Delli Paoli v. United States, 352 U.S. 232, 77 S. Ct. 294, 1 L.Ed.2d 278 (1957).

■ In May of 1968, however, the decision in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, expressly overruled the Paoli Case, the Court holding that an accused's right of cross-examination secured by the confrontation clause of the Sixth Amendment is violated at his joint trial with a codefendant who does not testify by the admission of the codefendant's confession inculpating the accused, notwithstanding limiting instructions to the jury that the codefend-

ant's confession must be disregarded in determining the accused's guilt or innocence. Twenty days later on June 20, 1968 the United States Supreme Court decided Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100, declaring that the Bruton ruling was retroactively applicable in both Federal and State prosecutions, since the rule corrects a serious flaw in the fact-finding process at the trial.[2]

The mandate of these decisions requires that we set aside the conviction of Wright, for the powerfully incriminating extrajudicial statements of Triplett, who stands accused side-by-side with Wright, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to Wright but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully and is made aware of the recognized motivation to shift blame onto others. "The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed." Bruton v. United States, supra.

The contention that Triplett's inculpatory statement was inadmissible, because it

was not freely and voluntarily made and the accused was not properly advised of his right to the advice of counsel and to remain silent, is without merit. The facts we have recited amply support this conclusion. See State v. Johnson, 249 La. 949, 968, 192 So.2d 135, 142 (1966).

BILL NO. 4

 This bill was reserved when the defense objected to the introduction of a whiskey bottle because the State's evidence did not properly identify the bottle as having come from Rinaudo's Grocery. The per curiam of the trial judge painstakingly and thoroughly reviews the evidence which refutes this contention. He set forth that the bottle had been taken from Triplett after he was pursued and arrested by Officer Rothman, shortly after the burglary was reported, and that this brand of liquor was in stock at Rinaudo's. The bottle was tagged by Officer Quebedeaux, who delivered it to the desk sergeant at the police station where it was held in safekeeping until Quebedeaux brought it to trial where he identified the tag and bottle. This evidence, in the absence of proof to the contrary, was entirely adequate to satisfy the requirement of admissibility. Relevancy is one of the weakest objections in our law.

2. The case of Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed. 2d 284, decided by the United States Supreme Court on June 2, 1969 has been considered in our deliberations and found to be inapplicable to the facts of the instant case.

## BILL NO. 5

■ What we say about Bill No. 4 is applicable to this bill, which is based upon the contention that certain objects introduced in evidence purporting to have been taken from the burglarized premises were not shown to have a connection with Rinaudo's Grocery. The bill, however, fails to cite all of the pertinent evidence, and the brief argues for a degree of absolute connexity which the law does not impose upon the prosecution. Connexity is a matter for the jury to decide, so long as the objects introduced are shown to have some relevance which the trial judge considers sufficient to warrant their introduction into evidence. State v. Stokes, 250 La. 277, 195 So.2d 267 (1967).

## BILL NO. 6

At the trial, defense counsel filed a motion in arrest of judgment based upon the proposition that (1) a fatal defect was patent on the face of the record because the bill of information failed to set out that a "structure" was entered as required by La.R.S. 14:62 and the short form of indictment permitted by Article 465 of the Code of Criminal Procedure, and (2) the statute (La.R.S. 14:62) under which defendants were prosecuted is unconstitutional because it is vague and indefinite and the Legislature by which it was enacted did not reapportion itself as required by Article III, Section 2, of the Louisiana Constitution (1921).[3] The motion in arrest of judgment was overruled. La.Code Crim.Proc. art. 859 et seq.

The bill of information charges that the two defendants feloniously did "commit simple burglary of Rinaudo's Red & White Grocery, located at 2532 Government Street, the property of Joseph Rinaudo." Prior to trial, a motion to quash the bill of information was filed on the ground that the bill of information does not charge any crime and it was unconstitutionally vague. This motion was overruled, and Bill of Exceptions No. 1 was reserved.

As we have already noted, the defense filed a motion for a bill of particulars, and the State answered in part, advising that it would introduce evidence to show "that the accused was a principal to the act of entering a structure, without authority, with the intent to commit a theft therein." If the answer to the bill of particulars could cure a purported defect in the bill of information, the answer thus supplied would clearly remove the objection that the bill of information did not set forth that the defendants entered a "structure". How-

---

3. La.Const. art. 3, Sec. 2 (1921) provides in pertinent part: "At its first regular session after the United States census of 1930, and after each census thereafter, the Legislature shall, and it is hereby directed to, apportion the representation among the several parishes and representative districts on the basis of total population as shown by such census.

ever, the indictment or information must satisfy the constitutional requirement that the accused be informed of the nature and cause of the accusation (La.Const. art. 1 § 10) without extrinsic explanation, and it must conform with requirements set out in Article 464 of the Code of Criminal Procedure, viz:

"The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice."

Recognizing that it is essential to a charge of burglary that the short form of the indictment name a structure, defendants refer us to several cases to support their contention. We think, however, that the latest expression of this Court on the subject can be found in State v. Rowan, 246 La. 38, 163 So.2d 87 (1964). Reference to that decision substantially disposes of this contention. There we said:

"In support of his motion in arrest the accused cites and relies on State v. Broussard, 233 La. 866, 98 So.2d 218. We do not find that it is controlling here. Therein the defendant was charged with

having committed 'simply burglary of Cagnina's Bar, in the City of Crowley * * *.' The holding was that the bill of information fell short of the requirements of the law since it 'failed to describe or particularize the houseboat "or other structure, water craft, movable as the case may be" purportedly unlawfully entered, and to specify or designate to whom it belonged * * *'. In so concluding we followed the reasoning of State v. McDonald et al., 178 La. 612, 152 So. 308, that it is the essence of the crime of burglary that there be an illegal entering of *some place, house or structure,* and that 'The American Hat Company' was not a place, house or structure. In the instant case, on the other hand, the information recites that the accused did wilfully, unlawfully and feloniously break and enter the 'store of J. J. Mayeaux'. Clearly this recitation connotes that *a place or structure* was illegally entered, and that it was owned by J. J. Mayeaux."

As in the Rowan Case, the bill of information before us connotes very clearly, without using the word "structure", that a structure was entered by referring to "Rinaudo's Red & White Grocery, located at 2532 Government Street". The word "grocery", unlike the term "bar" or "hat company", is a generic term, which, by definition, describes a structure or place more emphatically than the word "store"

standing alone, because it describes a more particular type of store. It is, in other words, a special type of store, which is invariably a structure of one kind or another. The law rarely demands a greater degree of exactness in the meaning of words, and we find this bill of information satisfies both the constitutional and statutory tests and that defendants were not misled to their prejudice.

■ We have been called upon before to decide whether enactments of the Legislature were invalid because the Legislature did not reapportion itself as required by Section 2 of Article I of the Constitution of this State. (See footnote 2.) In State v. Johnson, 249 La. 950, 192 So.2d 135 (1966) we declared in unmistakable terms that we would not invalidate all or any of the legislative enactments since 1930 on this account. We said then that if the legislators elected from unreapportioned districts were not de jure officers they were most certainly de facto officers and their actions were valid in every respect unless their right to hold office was directly attacked. There is no basis for reconsidering this pronouncement.

The motion in arrest of judgment was properly denied, and Bills Nos. 1 and 6 are without merit.

For the reasons assigned, the conviction and sentence of Lionel Triplett is affirmed;

the conviction of Shirley Wright, however, is set aside and he is granted a new trial.

SANDERS, Justice (concurring in part and dissenting in part).

I concur in the affirmance of defendant Triplett's conviction.

I dissent, however, from the reversal of defendant Wright's conviction. Under Bill of Exceptions No. 3, the majority holds the admission of Triplett's confession violates the rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), applying the decision retroactively to this case.

Bill of Exceptions No. 3, however, does not raise this point. The Bill is founded only on the allegation that Triplett was not advised of his constitutional rights and the confession was not free and voluntary. As held by the majority, these contentions lack merit.

The defendants filed no motion for a severance. The record contains no formal bill of exceptions objecting to the joint trial or to the admission of the confession because the trial was joint. In the absence of a bill of exceptions, this Court cannot review the question. LSA–C.Cr.P. Arts. 844, 920.

For the reasons assigned, I respectfully dissent.