457 So.2d 119 (1984)
STATE of Louisiana, Appellee,
v.
Donald Ray MORRIS, Appellant.
No. 16415-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1984.
Rehearing Denied October 26, 1984.
*121 Evans, Feist, Auer & Keene by Frank M. Auer, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Richard Carney and Catherine Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before PRICE, JASPER E. JONES and FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
The defendant, Donald Ray Morris, was charged by bill of information with simple burglary (LSA-R.S. 14:62) of the Shreveport Refrigeration store located at 7600 Youree Drive in Shreveport. He was found guilty as charged by a six member jury. The trial judge sentenced defendant as a second felony offender under LSA-R.S. 15:529.1 to eighteen years at hard labor. Defendant appeals his conviction and sentence relying on seven assignments of error. We affirm.

FACTS
At approximately 3:00 a.m. on March 30, 1983 Officer Johnny Lanear of the Shreveport Police Department, while responding to a call over the police radio stating that a silent alarm had been tripped at the Shreveport Refrigeration store on Youree Drive, saw an automobile matching the description of a car that had been observed leaving the scene of a burglary that occurred earlier the same morning. The car was headed west on Bert Kouns; a short distance from Shreveport Refrigeration. Lanear attempted to stop the car and investigate.
When Lanear turned on his flashing lights the car, a light green Plymouth, accelerated to a high rate of speed. Lanear pursued the Plymouth. The chase continued westerly down Bert Kouns until the driver of the Plymouth lost control of his vehicle and ran off the road into a wooded area near the New Castle Road. By the time Lanear arrived at the spot where the Plymouth came to rest, its driver had disappeared into the woods.
When Lanear began pursuing the Plymouth, he called on his radio for assistance. After the Plymouth ran off the road he relayed the location to the backup units and they surrounded the area. One of the backup officers, Tom Shumake, observed defendant running through the woods. He gave chase and arrested defendant. Shumake noted that defendant was wearing a black leather looking coat and dark pants. Defendant was subsequently taken to the Shreveport City Jail in a paddy wagon and the Plymouth was towed to the police impound lot.
Bob Peden, an employee of Shreveport Refrigeration, was notified that the alarm had been tripped shortly after it occurred and he went immediately to the store. When he arrived he noticed that a window had been broken out and three television sets were missing from a display case. He notified officers on the scene that a video camera mounted inside the store was filming the area where the window was broken and the display case was set up. Peden played the tape for the officers. The tape showed a person matching defendant's general description wearing a dark leather looking coat, a light colored shirt and dark pants enter the store three times through the broken window. Each time, the person carried a television set out through the window.
Later the same morning defendant was questioned by Detective Gary Lindsay. Defendant denied any involvement in the burglary and stated he did not know anything about the car. Lindsay obtained a search warrant for the Plymouth and executed it with the aid of Officer L.L. Jackson. During the search the officers found two television sets on the back seat and another in the trunk. Serial numbers on the televisions matched those supplied by *122 Shreveport Refrigeration. Jackson dusted the televisions for fingerprints and lifted a partial print matching defendant's from the bottom of one of the sets. When Lindsay confronted defendant with the information obtained in the search, defendant admitted the car was his and confessed to the burglary.[1] The confession was not recorded.

ASSIGNMENTS NO. 1 AND 3
By these assignments defendant contends the trial court erred in admitting the video tape made at Shreveport Refrigeration and the clothes he was allegedly wearing at the time of his arrest into evidence. Defendant argues the state failed to lay a proper foundation in that no continuous chain of custody was shown.
In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case; lack of positive identification or a defect in the chain of custody goes to the weight of evidence rather than to its admissibility. State v. Taylor, 422 So.2d 109 (La.1982); State v. Sam, 412 So.2d 1082 (La.1982); State v. Downing, 451 So.2d 1221 (La.App. 2d Cir.1984).
Peden testified he handed the video tape of the burglary to a police officer at the store. Officer Jim Derrick testified he received the tape from a Shreveport Refrigeration employee, placed his initials and the date on it and took the tape to the Identification Division at the Shreveport Police Department. Officer L.L. Jackson testified that he obtained the tape from a locker in the Identification Division and brought it to court for the trial. Derrick positively identified the tape introduced at trial, from his initials and the date written upon it, as the one given him by the Shreveport Refrigeration employee on the morning of the burglary.
Defendant complains the chain of custody was not established because Peden and Derrick did not identify each other and because there was some indication that other officers in the Identification Division viewed the tape after Derrick brought it in. These matters go to the weight to be given the tape and not to its admissibility. There was sufficient evidence for the jury to conclude that more probably than not, the tape introduced at trial was the one made at Shreveport Refrigeration.
Officer Daniel Meriam, the driver of the paddy wagon which transported the defendant to the jail, testified that after he booked defendant and turned him over to a jailer, he requested the jailer to secure for him the defendant's clothes. The jailer took defendant to a dressing area and required him to put on a jail uniform. The jailer took the defendant's street clothes and delivered them to Meriam in a paper bag. Meriam took the bag to the Identification Division without looking inside the bag and turned it over to Officer Derrick.[2] Officer Jackson testified that he picked the bag of clothes up from the Northwest Crime Lab and brought it to trial. At trial Meriam positively identified the coat as the one defendant was wearing the night of his arrest. Shumake, the arresting officer, said it appeared to be the same coat. Officer McKellar, who viewed the video tape, testified the coat removed from the bag was similar to the one worn by the man in the tape.[3] We therefore have Officers Meriam, Shumake and McKellar who substantially identified the coat taken from the bag as the one worn by the defendant on the night of the crime. There is a defect in the chain of custody on the bag from the time it left the Shreveport Identification Division until it was picked up by Officer Jackson at the Northwest Crime Lab. There is substantial evidence that the coat *123 removed from the bag was the one worn by the man who burglarized Shreveport Refrigeration. The weakness in the chain of custody goes to the weight of the evidence rather than its admissibility. We find this assignment of error without merit.

ASSIGNMENT NO. 2
By this assignment defendant contends the trial court erred in allowing the state to show the video tape made at Shreveport Refrigeration to the jury twice. The record reveals the tape was first shown at regular speed and then frame by frame. Defendant argues the second showing was merely cumulative and had no probative value.
Photographs which illustrate any fact, shed any light upon any factor at issue in the case, or reliably describe the person, place or thing depicted are admissible, provided their probative value outweighs any prejudicial effect. State v. Lindsey, 404 So.2d 466 (La.1981). The same rule applies to the admissibility of video tapes. State v. Burdgess, 434 So.2d 1062 (La.1983); State v. Garrison, 400 So.2d 874 (La.1981). In weighing the relative probative value of proffered evidence against its probable prejudicial effect, whether the evidence is merely cumulative is a factor to be considered. State v. Manieri, 378 So.2d 931 (La.1979); State v. Redwine, 337 So.2d 1041 (La.1976).
The video tape in question had probative value on two issues in this case: (1) whether a burglary was in fact committed; and (2) the identity of the perpetrator. The record reveals that the tape, when ran on regular speed, does not clearly reveal the identity of the person pictured. By reducing the speed and showing the tape frame by frame, the prosecution was attempting to enhance its identification value. We conclude that the second showing of the tape at the reduced speed was not merely cumulative.
There can be no doubt that the second showing was prejudicial to defendant; however, its probative value on the issue of identity outweighed its prejudicial effect.
This assignment of error lacks merit.

ASSIGNMENT NO. 4
By this assignment defendant contends there was insufficient evidence to support his conviction. He argues the state failed to prove: (1) his entry into Shreveport Refrigeration was unauthorized; (2) ownership of the televisions; and (3) that he was the one who committed the offense.[4]
The standard of appellate review of the sufficiency of the evidence is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Edwards, 420 So.2d 663 (La.1982).
In support of his contention that the state failed to prove unauthorized entry defendant points out that only two employees from Shreveport Refrigeration were called to the stand. Both men testified they did not know defendant and that he had never been authorized to enter the store after business hours. Defendant argues that another employee or the store owner could have given him permission to enter.
We find that the testimony of the two employees was sufficient to establish this element of the offense. It would have been an undue burden on the state to require it to call every person that had any connection with the store to the stand. In making this determination we note that entry into the store occurred at about 3:00 a.m. during non-business hours and was accomplished by breaking out a window. *124 A contention that the entry at that hour and in that manner was authorized is totally without merit.
Defendant argues the state failed to prove the televisions did not belong to him because the two Shreveport Refrigeration employees called to the stand were not asked who owned them. We find this contention to be without merit because there is sufficient circumstantial evidence in the record to establish the ownership element of the offense.
In order to meet the Jackson v. Virginia test for sufficiency of evidence, circumstantial evidence must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438; State v. Willis, 446 So.2d 795 (La.App. 2d Cir.1984); State v. Chism, 436 So.2d 464 (La.1983).
The evidence shows that the televisions were placed for sale in a display case inside Shreveport Refrigeration. Entry into the store was made through a broken window. The two employees were able to tell which televisions were missing by looking at the display case. A list containing the serial numbers of the merchandise on hand was maintained in the store and the serial numbers from the missing sets were supplied to the police from this list. The serial numbers on the sets recovered matched those supplied by the store and the televisions were returned to Shreveport Refrigeration. These circumstances exclude a finding that the televisions belonged to defendant.
Defendant's argument that there was insufficient evidence to link him to the offense is totally without merit. Officer Lanear pursued the car containing the missing televisions until it wrecked. Defendant was found within a few minutes running through the woods a short distance from the wreck during the early hours of the morning. He attempted to flee from the arresting officer. The general area was searched with the aid of bloodhounds after defendant's arrest and no other suspects were found. Defendant's appearance was similar to the perpetrator seen on the video tape and he was wearing the same type clothing. His fingerprint was found on one of the televisions found in the wrecked car. He confessed to the commission of the offense. This evidence excludes every reasonable hypothesis of innocence.
This assignment of error lacks merit.

ASSIGNMENT NO. 5
By this assignment defendant contends the trial court erred in denying his motion for a new trial. Two issues in addition to those discussed previously are raised for our determination.
Defendant first contends the trial court erred in admitting Detective Lindsay's testimony as to his alleged confession because the state failed to prove he was confessing to the charged offense rather than to a burglary that occurred earlier the same morning at another Shreveport Refrigeration store. During the earlier burglary two television sets were taken. Defendant was suspected of having committed that offense but there is no indication in the record that he was formally charged with it.
Defendant's complaint arises because the state's response to a discovery motion stated he admitted to, "burglarizing Shreveport Refrigeration and removing two T.V.'s." There is no further indication in the record that there was any doubt as to the offense defendant confessed to having committed. At the preliminary hearing Lindsay specifically stated that defendant confessed to burglarizing the 7600 Youree Drive store, the offense for which he was tried, and that he denied any involvement in the earlier offense.[5] At trial no evidence was admitted concerning the earlier offense. On direct examination Lindsay stated, "He (referring to defendant) advised that he was responsible for the offense on Youree Drive ..." We conclude the state's discovery response that defendant admitted to taking two televisions while the *125 charged offense involved the theft of three sets was not an indication that defendant confessed to a different offense than the one for which he was charged.
Defendant next contends the jury improperly considered extraneous information during its deliberations. In the application for a new trial defense counsel alleges that after the verdict was rendered the jury foreman informed him of the following:
a. The jury considered and deliberated over why the Defendant, Donald Ray Morris, did not take the stand in his on (sic) defense.
b. The jury was convinced that Donald Ray Morris was a multiple offender because he was unable to make bond for the offense of simple burglary.
The trial judge stated he was satisfied that the jury complied with his instructions and denied the motion without hearing evidence. LSA-R.S. 15:470 precludes a juror from testifying as to what occurred during the jury's deliberations. Defendant contends the court should have at least heard evidence on the allegation.
R.S. 15:470 provides:
No juror, grand or petit, is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member; but every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member.
The prohibition contained in this article is not absolute and must give way when there is a reasonable possibility that a defendant's constitutional right to a fair trial has been violated. State v. Sinegal, 393 So.2d 684 (La.1981); Durr v. Cook, 589 F.2d 891 (5th Cir.1979).
The policy behind 15:470 is to preserve the finality of jury verdicts and the confidentiality of discussions among jurors. State v. Charles, 377 So.2d 344 (La.1979); State v. Marchand, 362 So.2d 1090 (La. 1978).
Well pleaded allegations of prejudicial juror misconduct violating the defendant's constitutional rights require the court to hold an evidentiary hearing, at which jurors shall be required to testify. In the event the testimony establishes that a constitutional violation occurred and a reasonable possibility of prejudice exists, a new trial must be ordered. Durr v. Cook, supra; State v. Graham, 422 So.2d 123 (La. 1982); State v. Adams, 446 So.2d 355 (La. App. 3d Cir.1984).
Where the defendant fails to plead with particularity the juror's misconduct in his motion for new trial members of the jury are not competent to testify under the provisions of 15:470. State v. Nathan, 444 So.2d 231 (La.App. 1st Cir.1983), writ denied 445 So.2d 1232 (La.1984).
In Durr v. Cook, supra, the defendant alleged in detail the juror's misconduct and there the court held the juror was competent to testify. In State v. Nathan the defendant alleged only that a juror had been subjected to undue force by other jurors. The defendant called the juror to testify regarding these allegations. The trial court sustained the state's objection to the juror testifying on the basis of 15:470 for the reason that the defendant failed to allege the nature or extent of pressure applied upon the juror by other jurors. The Nathan court approved the trial court's action finding the defendant failed to present a substantial claim his rights had been violated.
The appellant here states only that the jury foreman said "that the jury considered and deliberated" over why the defendant did not take the stand. Defendant does not allege that the foreman said all of the jury or any one of the jurors disregarded the judge's instructions and concluded the failure of the defendant to testify was an indication of his guilt or was a factor considered by them in concluding that the defendant was guilty.
The defendant only alleges that the jury foreman stated the jury considered him to be a multiple offender because he was unable *126 to make bond. There was no evidence at trial that the defendant had failed to make bond. The defendant failed to allege where the jury obtained this information and further failed to state the reason why this information indicated to the jury that the defendant was a multiple offender; nor does the defendant allege that the jury or any of its members determined defendant's guilt based upon their conclusion that he was a multiple offender.
The factual allegations do not meet the test of "well pled allegations of prejudicial juror misconduct." The defendant fails to allege with particularity the basis for his contention that there has been jury misconduct in the nature of constitutional violations that created a reasonable possibility of prejudice.
We hold the defendant has not presented a substantial claim that his rights have been violated and for this reason the trial court's action of denying a hearing wherein the members of the jury would be required to testify was correct based upon the requirements of LSA-R.S. 15:470.
The assignment of error related to the denial of the motion for new trial is without merit.

ASSIGNMENT NO. 6
By this assignment defendant contends the bill of information was substantively defective because it failed to indicate that the Shreveport Refrigeration store burglarized is some type of "other structure." See LSA-R.S. 14:62 quoted in pertinent part in footnote # 4.
The bill of information originally stated that defendant, "did with intent to commit a theft therein, make an unauthorized entry of Shreveport Refrigeration ..." Prior to the close of the state's case the prosecutor moved to amend the bill to read, "... make an unauthorized entry, a building owned by Shreveport Refrigeration ..." Defendant objected to the amendment contending the amendment altered the substance of the bill and for this reason the bill could not be amended under LSA-C. Cr.P. art. 487 A since the trial was in progress.[6] The trial judge ruled that the amendment was one of form and allowed the state to amend.
After doing further research the trial judge decided he erred in his earlier ruling and declared a mistrial on the basis that the bill contained a defect of substance and could not be amended during trial. Defendant and the state objected to the declaration of a mistrial. A stay was granted on the court's ruling to allow the state to apply for writs. A panel of this court granted the writ and ruled that the declaration of a mistrial was error in light of defendant's objection. The trial judge was ordered to continue the trial.
The trial judge relied on the case of State v. McDonald, 178 La. 612, 152 So. 308 (1934) to support his decision that the bill of information was substantively defective. There it was charged that the defendants, "unlawfully did break and enter, in the night time, the American Hat Company..." The court found the bill of information was fatally defective because it did not state that the defendants entered a dwelling, building or other structure.
The supreme court expressly overruled McDonald in the case of State v. James, 305 So.2d 514 (La.1974). See also State v. Turner, 337 So.2d 1090 (La.1976). The rule announced in James is:

*127 ... [W]here in fact an accused has been fairly informed of the charge against him by the indictment and has not been prejudiced by surprise or lack of notice, the technical sufficiency of the indictment may not be questioned after conviction where, as here, no objection was raised to it prior to the verdict and where, without unfairness, the accused may be protected against further prosecution for any offense charged by it through examination of the pleadings and the evidence in the instant prosecution.
Defendant does not contend he was surprised or prejudiced by the alleged defect in the bill of information. The information contained in the bill was sufficient to place defendant on notice of the crime charged. Furthermore, defendant never formally objected to the sufficiency of the bill. His objection at trial was not that the bill was substantively defective; rather it was that the amendment was one of substance. He thereafter objected to the trial court's declaration of a mistrial on the grounds that the bill was defective. The defendant first attacks the bill of information as defective in a motion in arrest of judgment filed after verdict.
This assignment of error lacks merit.

ASSIGNMENT NO. 7
By this assignment defendant contends the trial judge gave inadequate weight to two mitigating circumstances in determining the sentence to be imposed and the sentence imposed is excessive. The mitigating circumstances to which defendant refers are, the burglary involved no physical violence and he has two dependent children in need of his financial support.
The maximum sentence to which defendant was exposed on the simple burglary conviction is twelve years. This sentence could have been doubled for a total of twenty-four years under the multiple offender bill filed against defendant. LSA-R.S. 15:529.1 A(1). The eighteen years defendant received is well within the statutory maximum.
The sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Hammonds, 434 So.2d 452 (La.App.2d Cir.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir. 1983); State v. Square, 433 So.2d 104 (La. 1983).
A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974 Art. 1, § 20 if it is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La. App. 2d Cir.1983).
The sentencing guidelines of LSA-C. Cr.P. art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983); State v. Sepulvado, 367 So.2d 762 (La.1979).
The presentence investigation report compiled at the direction of the trial judge shows that defendant has an extensive history of criminal behavior including several theft type charges and convictions. He had a prior felony conviction for simple burglary. The report shows he has a prior conviction for criminal neglect of family. The support provided his children by defendant is at best sporadic.
At defendant's sentencing hearing the trial judge thoroughly complied with 894.1. The judge determined defendant's criminal record far outweighed any mitigating circumstances and he noted defendant has persisted in this criminal behavior despite his repeated confrontations with the law. We find no abuse of discretion in the sentence imposed.
This assignment of error lacks merit.
Defendant's conviction and sentence are AFFIRMED.
NOTES
[1] Before questioning defendant on both occasions Lindsay read him his Miranda rights and defendant signed waiver of rights forms.
[2] Defendant makes much of the fact that Derrick stated he never handled the clothing. The record reveals that Derrick was never asked if Meriam handed him a paper bag.
[3] Apparently the shirt and pants are standard type apparel. These items were tentatively identified.
[4] Simple burglary is defined as, "the unauthorized entering of any dwelling, vehicle, watercraft, or other structure ... with the intent to commit a ... theft therein ..." R.S. 14:62. Theft is defined in part as the taking of anything of value which belongs to another. LSA-R.S. 14:67.
[5] The earlier burglary occurred at the Shreveport Refrigeration store located in the Shreve City Shopping Center which is on the Shreveport-Barksdale Highway.
[6] C.Cr.P. 487 A provides:

A. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.
Before the trial begins the court may order an indictment amended with respect to a defect of substance. After the trial begins a mistrial shall be ordered on the ground of a defect of substance. (emphasis supplied)