444 So.2d 231 (1983)
STATE of Louisiana
v.
Robert NATHAN.
No. 83 KA 0466.
Court of Appeal of Louisiana, First Circuit.
December 22, 1983.
Writ Denied February 27, 1984.
*233 Bernard E. Boudreaux, Jr., Dist. Atty., Edward M. Leonard, Jr., Asst. Dist. Atty., Franklin, for appellee.
Richard P. Ieyoub, John Percy Foreman, Lake Charles, for appellant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
LOTTINGER, Judge.
Defendant, Robert Nathan, was indicted by the grand jury for aggravated crime against nature, aggravated rape, and aggravated kidnapping, occurring on February 28, 1982, in violation of La.R.S. 14:89.1, 42 and 44 respectively. Defendant plead not guilty. After trial by jury on the aggravated rape charge, he was found guilty of forcible rape. He was sentenced to twenty-five (25) years at hard labor with at least two (2) years without benefit of probation, parole, or suspension of sentence and with credit for time served from arrest to the date of sentencing. Defendant appeals his conviction and sentence, alleging nineteen assignments of error, of which he has briefed eighteen to this court. An assignment of error not briefed is considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.[1]
On the evening of February 28, 1982, a young woman after visiting a friend was driving home alone in her boyfriend's truck down Willow Street in Franklin. While stopped at a red light, a man opened the truck door, pushed her over and got in. He stated he wanted a ride and would pay for the gas. The woman told him she was on her way home and could not give him a ride. He began driving, however, and eventually turned off the road and into a cane field where he stopped the truck. He told the victim he was going to rape her and then began to hit her with his fist. The truck was wrecked on the passenger side which prevented the door from being opened. Thus, the woman was unable to open the door and escape.
The man forced her to take off her clothes, took off his pants and began to have sexual intercourse with the woman on the seat of the truck. He continued to hit and threaten to kill the victim. She was then forced to perform oral copulation.
*234 Thereafter, the rapist forced the woman to have anal intercourse. After this act, the man picked up a long neck beer bottle from the floor of the truck and inserted it into the victim's rectum. After removing this he again forced her to have oral sex and anal intercourse. He then made her put her clothes on and pulled her out of the truck toward some trees. There he hit her in the head with a beer bottle, cut her throat and stomach and kicked her. He threw down the broken beer bottles, pulled her back into the truck and drove back into town. There he left the truck and warned the victim not to say anything about the attack.
The victim started the vehicle and tried to run over the man. The truck, however, stalled; and the man started coming towards the truck. She was able to restart the truck and drove home.
Upon arriving home, she told her boyfriend she had been raped and he called the police. He took her to the hospital where she was treated for her injuries, examined and released. Then they went to the police station, where she gave a description of defendant and viewed a photographic lineup. In addition to identifying defendant at this and two other photographic lineups, the victim made a positive in-court identification of defendant.

ASSIGNMENT OF ERROR NOS. 1, 5, AND 8
Defendant argues that the trial court erred in the denial of the motion to suppress defendant's confession because it was involuntary and because the judge considered matters outside the evidence.
In Louisiana the statutorily mandated test for voluntariness is not whether a confession was induced by improper external forces but whether the confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451; State v. Jackson, 381 So.2d 485 (La.1980). The State has the burden of affirmatively proving that the confession was free and voluntary. Accordingly, it must rebut specific testimony introduced by the defendant concerning factual circumstances which indicate coercive measures or intimidation. State v. Brooks, 434 So.2d 1171 (La.App. 1st Cir. 1983).
The admissibility of a confession is a question for the trial judge. His conclusions on credibility and the weight of testimony regarding the voluntariness of a confession for admissibility purposes will not be overturned on appeal unless they are unsupported by the evidence. State v. Brooks, supra.
During interrogation defendant began to cry and indicated he had been hearing voices which told him to do criminal acts. Despite the crying, the deputies continued the questioning. The record indicates Detective Arthur said he would try to get some help for defendant if defendant told the truth. Defendant contends the confession was induced by this promise of help for defendant's emotional problems.
The trial judge acknowledged that defendant was obviously upset during the questioning, but he found that this crying was not caused by physical force, nor any undue influence by the police. Additionally, the trial court ruled that the promise of help was not an inducement which caused defendant to make his statement. We agree.
In State v. Hernandez, 432 So.2d 350 (La.App. 1st Cir.1983) the defendant testified he was offered help by the officer questioning him. The officer stated he would help the defendant if he gave a statement. In that case we found that the vague promise to help was insufficient to negate the voluntary nature of defendant's responses to questioning. Likewise, here, we hold that the promise to help cannot be considered sufficient inducement to vitiate the voluntary nature of defendant's inculpatory statement.
ASSIGNMENT OF ERROR NOS. 2, 3, 4, 6, 7, 9 AND 10
Defendant contends the trial court erred in failing to suppress the rape victim's out-of-court *235 identification of defendant and the photo array evidence. Three photographic lineups were conducted in this case. The first occurred the night of the rape and consisted of six black and white photographs. The victim selected the photograph of defendant but said she would like to see him in person before she could be positive. Detective Arthur stated that was not possible at the time, but he did obtain a color photograph of defendant for a second photo lineup. This second array, conducted a few days later, consisted of six color photos, one of which included defendant. Defendant was the only person from the first lineup whose picture also appeared in the second. The officer did indicate to the victim that a photo of defendant was included in the second array, although he did not suggest which photo was that of defendant.
The defense contends that the victim knew the name of defendant at this second lineup and that these photographs contained names on the bottom which the victim saw. Detective Arthur testified that the victim knew the name since she signed the photo array report from which contained the name of the man she identified. The victim testified that, although the name was on the form, she did not recall nor recognize his name. In any event, the victim testified that the photographs were in a file folder which covered the names when she viewed them. Although he was not sure when he testified at the motion to suppress, Detective Arthur agreed the names were covered when he testified at trial.
After the second photo array, the victim stated she was sure but wanted to see the first photo array one more time in order to positively identify the rapist. The third array was almost identical to the first, except that one photograph, not that of defendant, was exchanged for another. Detective Arthur could not recall why this was done. At this third lineup, however, the victim positively identified defendant as the man who raped her.
Defendant contends the photographic lineups were suggestive because the victim knew the name of defendant at the second lineup where the victim saw the names on the photos, defendant was the only person included in both the first and second arrays, the detective told the victim that he had a better and clearer picture of defendant which would aid her identification, and a witness for the State perjured himself on the stand regarding the circumstances under which one of the arrays was conducted.
In determining the constitutionality of an out-of-court identification, several factors must be considered. First, the suggestiveness of the identification procedure must be evaluated. State v. Guillot, 353 So.2d 1005 (La.1977). A lineup is unduly suggestive if the identification procedure displays the defendant so that the witness' attention is focused on the defendant. State v. Robinson, 386 So.2d 1374 (La. 1980). In reviewing the procedure, the trial court must look at the totality of the circumstances surrounding the identification. State v. Marchese, 430 So.2d 1303 (La.App. 1st Cir.1983).
Although the testimony does indicate the victim knew defendant's picture was in the second photo lineup, that only a photograph of defendant was included in both the first and second lineups, and that the victim may have known the name of the man she identified, we find that there was nothing on the photographs nor anything said to the victim that singled out defendant. In addition, we find that the testimony adduced indicates the names on the photographs were not visible at the second photographic lineup.
Even if an identification is suggestive, it will not result in reversal of a conviction if it is demonstrated that the identification was reliable. The factors to be used in determining reliability include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of her prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. Manson *236 v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Guillot, supra.
Applying the Manson analysis to the present case, we find that the out-of-court and in-court identifications were reliable and that there was no misidentification.
(1) The opportunity to view: The victim was with defendant for approximately an hour. Although the rape occurred at night, the victim was in close proximity to the rapist and would have had a good opportunity to view him.
(2) The witness' degree of attention: The victim was not a casual observer; her full attention was focused on her attacker and his actions.
(3) The accuracy of the description: The victim gave a description to Detective Arthur which reminded him of defendant. The officer used this description to prepare a photo array including defendant's photograph which the victim identified.
(4) The witness' level of certainty: The victim consistently identified defendant as the rapist.
(5) The time between the crime and the confrontation: Although the lineup occurred about three months after the rape, the first photo lineup occurred the night of the attack. The second occurred the next day, and the third occurred three days after the rape.
Defense counsel argues the procedure used in the live lineup was suggestive because the attention of the victim was unduly focused on defendant. We find this argument to be without merit. In his brief, defendant admits that, when the victim looked straight through the peep hole, her attention would have been focused on someone who was standing to the right of the defendant, not defendant himself.
Furthermore, we find that there was sufficient resemblance of the physical characteristics and features of persons in the lineup so that the witness' attention was not focused on defendant. Although there was a difference in some of the features, such as height, there was enough resemblance in other features, such as hair color, skin color and complexion, that no undue suggestion occurred in this lineup. A strict identity of characteristics is not required, but a sufficient resemblance to reasonably test the identification is necessary. State v. Guillot, supra.

ASSIGNMENT OF ERROR NO. 11
Defendant alleges the chain of custody of the broken beer bottles and cup holder introduced at trial was defective. A showing of a continuous chain of custody is not essential to the introduction of physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced is the same as the object originally seized by the officer, State v. Vaughn, 431 So.2d 763 (La. 1983); State v. Albert, 430 So.2d 1279 (La. App. 1st Cir.1983). A complete chain of custody was not clearly established.
The evidence, however, was positively identified by Detective Arthur. That testimony combined with the testimony of Mr. Girouard makes it more probable than not that the beer bottles and cup holder introduced were the same as those in the truck and later found by Detective Arthur at the location of the rape. We find no error in the admission of this evidence.

ASSIGNMENT OF ERROR NO. 12
Defendant contends that his sentence of twenty-five years in prison at hard labor, with two years without benefit of parole, probation, or suspension of sentence, is excessive. Defendant was charged with aggravated rape, however, the jury returned a verdict of guilty of forcible rape. The sentencing range for forcible rape is not less than two nor more than forty years, with at least two years of the sentence without benefit of probation, parole or suspension of sentence. La.R.S. 14:42.1.
Sentences in Louisiana for forcible rape generally reflect a range from ten to twenty-five years at hard labor, with parole *237 excluded for periods of two to eight years. Some cases have imposed the maximum sentence of forty years at hard labor. See State v. Telsee, 425 So.2d 1251 (La.1983). Considering the trial judge's reasons for sentencing and the record as a whole, we do not find that the sentence imposed is excessive.

ASSIGNMENT OF ERROR NOS. 13 AND 14
Defendant contends the trial court erred in failing to grant defendant's two motions for mistrial on references by a witness regarding other crimes committed by defendant.
During the trial, Detective Arthur made several references to pictures for the photo lineup acquired from the criminal files of the Iberia Parish Sheriff's Department. Defendant argues this testimony served as the basis for a mistrial.
La.Code Crim.P. art. 770 mandates a mistrial upon motion of the defendant when a remark or comment made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. A police officer, however, is not a court official within the meaning of La. Code Crim.P. art. 770; and, therefore, a mistrial is not required even if a policeman in the course of testifying refers to another crime. State v. Harper, 430 So.2d 627 (La.1983); State v. Perry, 420 So.2d 139 (La.1982). The appropriate remedy for inappropriate remarks by a police officer is an admonition to the jury each time the remarks were made by the detective. Thus, we find that the trial judge did not err in denying defendant's motions for mistrial.

ASSIGNMENT OF ERROR NOS. 15, 16, AND 19
Defendant contends the trial court erred in denying the motion for new trial based on a prejudicial error in the proceedings. At the hearing on the motion, counsel for defendant attempted to call Ms. O'Prien, one of the trial jurors, and examine her regarding undue force placed on her from other jurors. The State objected on the basis of La.R.S. 15:470. The trial court sustained the objection and denied the motion for a new trial.
Under La.R.S. 15:470 a juror is not competent to give testimony to impeach the verdict rendered by a jury of which he was a member. That evidentiary rule, however, cannot overcome the defendant's constitutional rights. Durr v. Cook, 589 F.2d 891 (U.S.App. 5th Cir.1979), State v. Sinegal, 393 So.2d 684 (La.1981). In Durr v. Cook, supra, the court noted that Durr presented a substantial claim that his rights may have been violated, and thus the jury foreman could testify. Here, however, the trial court in ruling the juror incompetent to testify and in denying the motion for new trial, noted defendant did not state with particularity the nature or the type of the extent of any adverse influence upon any prespective juror. We find that defendant has not presented a substantial claim that his rights have been violated. Therefore, the trial court did not err in applying La. R.S. 15:470 to prevent the juror from testifying and in denying the motion for new trial.

ASSIGNMENT OF ERROR NO. 18
Defendant contends the State's evidence was insufficient to prove his guilt. The evidence is sufficient if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Long, 408 So.2d 1221 (La.1982). After a review of the record, we find the evidence sufficient to support defendant's conviction. Not only did the evidence include testimony regarding defendant's oral inculpatory statement, the victim made a positive identification in an out-of-court photo lineup and an in-court identification of defendant.

*238 DECREE
Therefore, for the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Assignment of error number 17 was not briefed to this Court. Although assignment of error number 3 was not listed, it was included in defense counsel's second argument and is addressed here.