479 So.2d 515 (1985)
STATE of Louisiana
v.
Rodger Dale PHILLIPS.
No. KA 85 0122.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
Dissenting Opinion November 25, 1985.
Rehearing Denied December 26, 1985.
William R. Coenen, Jr., Dist. Atty., Oak Grove, for State of La., appellee.
C.J. D'Aquila, Port Allen, for defendant-appellant.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
The district attorney for the fifth judicial, West Carroll Parish, billed Rodger Dale Phillips with sixty-four counts of felony theft, in violation of La.-R.S. 14:67. At arraignment, defendant entered a plea of not guilty. Subsequently, on motion of defendant, venue was transferred to West Baton Rouge Parish. Thereafter, pursuant to a plea bargain, defendant entered a plea *516 of guilty to thirty counts of felony theft. In exchange for his plea, the state dismissed thirty-four counts of felony theft and sixty-four counts of conspiracy to commit felony theft. After a hearing, defendant was sentenced to serve twenty-four years at hard labor. He has appealed, setting forth five assignments of error, to wit:
1. The trial court erred in denying his motion to suppress inculpatory statements.
2. The trial court erred in denying his motion to quash the indictment.
3. The trial court erred in denying his motion to withdraw his guilty plea.
4. The trial court erred in imposing an illegal sentence.
5. The trial court erred when it informed defendant he faced a maximum of ten years imprisonment for each of the thirty theft offenses, which erroneous information rendered the subsequent plea involuntary.
Assignment of error number two was not briefed on appeal and is, thereby, considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.
At the time of the offenses, defendant was the treasurer of the West Carroll Parish Police Jury. In that capacity, he conspired with Eldon Joles, the president of the police jury, and others to defraud that body of several hundred thousand dollars by issuing checks for goods and services which were not actually provided. The proceeds of these checks, totalling $442,049.90, were split among the conspirators.
Defendant asserts that the scheme enacted by Joles and himself continued for over three years. During this time, defendant alleges he gave the district attorney approximately $25,000.00 in cash in response to requests for financial assistance. Defendant also claims he was approached by a fifth judicial district judge who asked for the same sort of assistance and that he gave the judge approximately $20,000.00.
After learning of a state investigation into the police jury accounts, defendant claims he received assurances from the district attorney and judge that his involvement would be "taken care of." He asserts that the district attorney told him that no charges would arise from the investigation and that the judge told him that any charges that might arise would be directed to his court and disposed of accordingly. Defendant claims that he was relying on these promises when he confessed to state investigators. After charges were formally instituted, defendant moved to suppress his confession, claiming it was involuntary because he relied on the aforementioned promises, which had not been kept. Defendant's motion was denied. Thereafter, he pled guilty, reserving his right to appeal the denial of his motion to suppress.[1]
At the time defendant entered his plea, he requested, as part of the bargain, that the results of an ongoing federal investigation be included in the presentence report. On the date of sentencing, defendant failed to provide this report to the trial judge. He asserts, however, that he agreed to forego introduction of the report in return for a favorable determination of credibility by the trial judge. As the trial court expressed its reasons for the imposition of sentence, defendant interjected that the court's remarks indicated an unfavorable credibility determination, and he wished to adhere to the original agreement to enter the results of the federal investigation into the record. The court noted to defendant *517 that he had abrogated his responsibility in failing to obtain and submit the results and, further, that the submission would not benefit him. The court did agree to continue the sentencing hearing for thirty days in order to obtain these results. However, before the proceedings concluded, the assistant district attorney who prosecuted this case and the trial judge contacted an FBI agent who advised that there was no ongoing federal investigation. Defendant's federal complaint, in which he outlined the involvement of the West Carroll Parish district attorney and judge to federal investigators, constituted the entirety of those proceedings; and the federal investigator stated this complaint would not be acted upon until the state proceedings had been completed. The trial court then imposed the sentence.

MOTION TO SUPPRESS

(ASSIGNMENT OF ERROR NUMBER ONE)
Defendant claims his confession should have been suppressed because it was not voluntarily made but was induced by promises of immunity by corrupt officials.
The state has the burden of proving the admissibility of a confession. La.C. Cr.P. art. 703(D). The state must show that the confession was free and voluntary and not induced by threats, promises or coercion. La.R.S. 15:451; State v. Neslo, 433 So.2d 73 (La.1983). The state must prove the facts establishing admissibility of a confession beyond a reasonable doubt. State v. Burkhalter, 428 So.2d 449 (La. 1983). When a defendant alleges police misconduct in reference to the confession, the state must specifically rebut these allegations. State v. Welch, 448 So.2d 705 (La.App. 1st Cir.1984), writ denied, 450 So.2d 952 (La.1984). The factual conclusions of a district court on the admissibility of a confession will not be overturned on appeal unless they are not supported by the evidence. State v. Nathan, 444 So.2d 231 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1232 (La.1984).
Defendant testified at the hearing on the motion to suppress, setting forth the improper promises he claims were presented. The district attorney accused by defendant also testified and categorically denied that improper offers had been made. In denying the motion, the trial court indicated defendant's testimony, in which he repeatedly contradicted himself, was not credible. The trial court stated as follows:
I can't believe his testimony. Even assuming what he says about the district attorney and the judge is true regarding the money, it's my feelings of listening to the testimony, even if it is true, and I don't say it is, just assuming other than his word. No one has made him any promises. Even the state trooper just said it a minute ago when you asked him.
It's my feelings that if he did give the money he felt safe just in the fact of the insurance as he stated on the stand. He felt safe that nothing was going to happen to him. So what does he do. He spills his guts through his own feelings of safety and not from anybody else. And now he wants to suppress his statements, which I find there's no basis. Nobody lured him into a false feeling of security. I think he puts himself in that position.
The trial court was presented with conflicting testimony. The court obviously found the testimony of the state witnesses more credible, and this determination was within its discretion. State v. Nathan, supra.
We find the record amply supports the trial court's determination that the confession was voluntarily made.
Defendant also alleges that the statements were taken in contravention of his Sixth Amendment right to have counsel present during questioning.
The statements of an accused, whether exculpatory or inculpatory, when made during a custodial interrogation, should be suppressed unless the accused is first advised of, and subsequently waives, his right to remain silent and his right to counsel. *518 Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); La. Const. Art. I § 13. When an accused asserts his right to counsel, the police must scrupulously honor the invocation of the right and interrogation must cease. State v. Harper, 430 So.2d 627 (La.1983).
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that, when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. The Court further held that an accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him unless the accused himself initiates further communication, exchanges or conversations with the police. State v. Arceneaux, 425 So.2d 740 (La.1983).
It is undisputed that defendant requested the opportunity to speak with an attorney before questioning was initiated. Defendant was permitted to summon counsel of his choice and conferred with him privately. After consultation, the attorney related that he would not be able to represent defendant because of his lack of expertise in criminal law. After this attorney left, defendant then waived his rights, including the right to have an attorney present during questioning, and answered the questions presented to him. Defendant now claims the state failed to show that he intentionally abandoned the right to counsel by initiating contact after the attorney he contacted left.
We find, however, that Edwards v. Arizona, supra, is not applicable because defendant's statement was not the product of a custodial interrogation. In California v. Beheler, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), the Supreme Court analyzed the facts that render an interview with police a custodial interrogation, and thus one during which the defendant is entitled to the safeguards in Miranda v. Arizona, supra. The Court held that, although the circumstances of each case must certainly influence a determination of whether a suspect is "in custody" for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest. California v. Beheler, supra, 103 S.Ct. at 3519-3520, (quoting Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). In California v. Beheler, as was the case in Oregon v. Mathiason, the police initiated contact with the defendant, who voluntarily came to the police station for an interview, following which the defendant left on his own accord. Quoting again from its decision in Oregon v. Mathiason, supra, 97 S.Ct. at 714, the court, in California v. Beheler, stated:
Such a noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." ... The police are required to give Miranda warning only "where there has been such a restriction on a person's freedom as to render him `in custody.'"... Our holding relied on the very practical recognition that "(a)ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime."
103 S.Ct. at 3519.
We find no indication that defendant was "in custody" when the confession was made. Officer Lott and District Attorney Loftin both testified that defendant himself requested the meeting. At the hearing on the motion to suppress, defendant swore that the meeting which resulted in his confession was initiated by police contact. Assuming that defendant was requested and *519 voluntarily came to the meeting, this does not render the meeting custodial, as demonstrated by California v. Beheler and Oregon v. Mathiason. Officer Lott expressly testified that defendant would have been allowed to leave if he had chosen to do so. We find, therefore, that defendant was not entitled to the strict guidelines of Edwards v. Arizona, supra, because the statement he gave was the result of a noncustodial interrogation. Defendant was not denied his Sixth Amendment right to counsel by the continuation of the questioning after defendant waived his right to counsel after having previously requested the opportunity to contact an attorney.

WITHDRAWAL OF GUILTY PLEA

(ASSIGNMENTS OF ERROR THREE AND FIVE)
In these assignments of error, defendant alleges the trial court erred in denying his motion to withdraw his guilty plea because the trial court breached a plea bargain, and because the court erred when it informed him he faced a maximum of ten years imprisonment for each of the thirty theft offenses, which rendered the subsequent plea involuntary by overstating the advantage to be gained by pleading guilty.
Defendant contends that, prior to the sentencing hearing, when it became obvious that the federal investigative report had not been delivered to the trial court, he agreed to forego the inclusion of this report in the presentence investigation in return for the trial court's agreement to make a favorable determination of his credibility. Although the actual agreement regarding the credibility determination was not made a part of the record, there was a considerable amount of discussion pertaining to the court's determination of defendant's credibility and whether or not that determination was favorable at the sentencing hearing of September 5, 1984.[2] Importantly, the trial court did not deny this agreement had been made; therefore, we will assume the court made the agreement alleged by defendant.
Defendant contends the judge breached his earlier commitment by making an unfavorable credibility determination following which he moved to withdraw his guilty plea. The court denied the motion. The issue on appeal is whether the trial court was required to permit defendant to withdraw his guilty plea because the agreement was not kept.[3]
Following the elicitation of defendant's testimony at the sentencing hearing, counsel for defendant addressed the court and the court responded as follows:
Judge, I think that's all we have. I think we've talked to the Court in chambers about the reason that we wanted the federal investigatory report and that may be taken care of without ...
THE COURT: Well, I understand your point on it, however, like I say, it would have no real effect. I think on the sentencing you were concerned about credibility and I think he pretty much told us what the truth was sitting right here. (R 162-163)
The state then called its witness, David Robert Lollar, who gave testimony at the sentencing hearing, following which the court undertook a hearing in another matter, after which the court returned to its consideration of the instant case. The court accordingly began a review of the testimony elicited at the sentencing hearing and undertook what appears to be a rather thorough review of the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 in relation to defendant. Following that review, the court announced that it would sentence defendant to some time in prison. At this juncture of the proceeding, defense *520 counsel objected and the following discussion transpired:
MR. KIDD: My objection is that, in effect, what I had understood to be a finding of credibility on the behalf of Mr. Phillips turns out not to be a finding of credibility on behalf of Mr. Phillips. Consequently, I want to make sure before sentence is pronounced that what was part of the plea bargain is, in fact, made a part of the pre-sentence, which it has not been, because, in effect, right now if the sentence is pronounced without benefit of the reviewing court to determine whether, in fact, it's Mr. Loftin who's telling the truthMr. Loftin testified or Mr. Phillips, then I have nothing to buttress or support my client's position. Consequently, I object on the grounds ennunciated (sic) about the credibility; only with the credibility.
* * * * * *
THE COURT: I'm not saying I don't believe what this man said about what he's told and about what he did and about who was with him and about how much it was and how they went about doing it. I believe that. Now, it doesn't mean I have to believe every word he says.
I'm telling you what, I'm looking at the man and he sat beside me and I believe him. Now, as far as everything on this earth; if this man has never told a lie in his life I'm wrong. I don't believe that ever occurred. This young man obviously has told some lies. But as far as what he got up here and told me today regarding what he did and the questions he answered, I think for the most part he told me the truth. That's right. (Emphasis ours.)
The trial judge, at this point, was referring to defendant's testimony at the sentencing hearing, at which he had referred only generally to the alleged activities with the district attorney and judge, as well as implicating other individuals. The trial judge, however, had apparently agreed to make the favorable credibility determination before this hearing, based on defendant's testimony at the hearing on the motion to suppress. Such a determination cannot be reconciled with the trial judge's remarks at the conclusion of the hearing on the motion to suppress, infra, in which he specifically stated that he could not believe defendant's testimony. It appears, therefore, that the trial judge, having denied defendant's motion to suppress based on the alleged inducements, could not have made a favorable determination of defendant's credibility.
A guilty plea is constitutionally infirm when a defendant is induced to enter that plea by a plea bargain or by what he justifiably believes was a plea bargain, and that bargain is not kept. In such a case a defendant has been denied due process of law because the plea was not given freely and knowingly. State v. Dixon, 449 So.2d 463 (La.1984). Defendant's allegation that the plea bargain was not performed may properly be raised on an appeal following a qualified guilty plea. See State v. Crosby, 338 So.2d 584, 586 (La.1976).
We find, therefore, that the trial court did not comply with its agreement to make a favorable determination of defendant's credibility, and defendant must be allowed to withdraw his guilty plea. Having found merit to this assignment of error, we pretermit discussion of defendant's other assignments, reverse and remand the matter for further proceedings consistent with the views herein expressed.
REVERSED AND REMANDED.
LANIER, J., dissents and assigns reasons.
LANIER, Judge, dissenting.
I agree that the motion to suppress the confession was properly denied but dissent from setting aside the guilty pleas at this point in time.
In brief, the defendant asserts the following:
Prior to sentencing, it became obvious that the federal investigative report had not been completed and delivered to the *521 sentencing Court. Defendant, through the undersigned counsel, met with the trial Judge in chambers and agreed to forego the federal investigative report in return for the trial Judge's agreement to make a favorable determination as to defendant's credibility. R. 162-163. The Court's assessment of the defendant's credibility at the sentencing hearing was obviously very important, in view of the Court's earlier assessment of the defendant's credibility in a rather negative tone (pp. 230-233 of the transcript of the second June 25, 1984, hearing).
During the course of the September 5, 1984, sentencing hearing, it became apparent that the trial Judge was unwilling to remain bound by his earlier commitment concerning the evaluation of defendant's credibility. While formulating the reasons for the sentence to be imposed, the Trial Court noted that the District Attorney had characterized the defendant as a "con-man" and actually commended the District Attorney for initiating the prosecution by way of a Bill of Information. R. 176-178. When the Trial Court made an unfavorable determination as to the defendant's credibility, defense counsel objected and moved to withdraw the guilty plea. R. 181-206.
In brief, the State asserts "[a] review of the records show that the actual facts are not as so stated by defendant." The State, in essence, asserts the trial judge believed the defendant "actually conveyed information to the F.B.I. concerning the alleged bribes" and "[t]o this extent, the judge honored any so-called `agreement' that he may have made with defense counsel." The State then argues as follows:
Finally, the defendant waived whatever right he had to have the report included, as he stated that the judge agreed to a favorable credibility finding as to the fact that defendant had in fact told the Federal investigators what was stated by him at the motion to suppress. The judge did in fact say he believed the defendant in part, but he was not required to believe defendant entirely. Finally, the question of credibility actually had no bearing on the sentence, as the defendant admitted theft of over $300,000.00 in public funds, and the court could, under the circumstances, impose its sentence regardless of the alleged credibility or non-credibility of defendant. (Emphasis added).
The majority opinion correctly states that the "actual agreement" between the trial judge and the defendant "was not made a part of the record". In footnote 2, the majority admonishes the trial court to put "arrangements of this type on the record, so that the terms of such an agreement will be subject to review for compliance." The majority then states it "will assume the court made the agreement alleged by defendant" because "the trial court did not deny this agreement had been made". (Emphasis added). The majority then found as fact the trial judge "apparently agreed to make the favorable credibility determination before this hearing, based on defendant's testimony at the hearing on the motion to suppress." The majority then reasons as follows to justify setting aside the guilty pleas:
Such a determination cannot be reconciled with the trial judge's remarks at the conclusion of the hearing on the motion to suppress, infra, in which he specifically stated that he could not believe defendant's testimony. It appears, therefore, that the trial judge, having denied defendant's motion to suppress based on the alleged inducements, could not have made a favorable determination of defendant's credibility.
In the briefs of the parties, there is a dispute over what the agreement was: (1) the defendant contending the trial judge agreed to "make a determination of credibility in favor of the defendant concerning allegations of misconduct on the part of certain officials which precipitated his involvement in the questioned criminal conduct"; and (2) the State contending the court only agreed to believe the "defendant had in fact told the Federal investigators what was stated by him at the motion to suppress". The majority concedes the actual *522 agreement is not in the record. The actions of the trial judge and the record indicate the trial judge did not perceive the agreement the same as the defendant's counsel. See the attached portion of the transcript attached hereto as Appendix A. In this factual posture, the record is ambivalent as to exactly what was the agreement. In such a situation, this court has the authority to remand for an evidentiary hearing to precisely determine the facts. State v. Sterling, 444 So.2d 273 (La.App. 1st Cir.1983), affirmed after remand, 462 So.2d 290 (La.App. 1st Cir.1984), writ denied, 466 So.2d 466 (La.1985), and the cases cited therein. This is a preferable procedure to assuming facts based on a trial judge's silence thereon.
This case should be remanded to a different trial judge with instructions to conduct an evidentiary hearing to determine the terms of the contested agreement. This court should retain jurisdiction over this appeal, subject to the following: if the trial court determines the original trial judge breached his agreement with the defendant, the guilty pleas should be set aside, reserving to the State the right to seek a supervisory writ from this court for a review of such ruling, and, in the absence of such writ, this appeal will be mooted; if the trial court finds the agreement was not breached, it shall transmit to this court its ruling and the record of the evidentiary hearing so this court may complete its review of this issue and the remaining assignments of error, reserving to the defendant the right to assign any additional errors which allegedly occurred during the hearing.
I believe it to be fundamentally unfair to assume misconduct from the silence of a trial court judge in the factual posture of the instant case. When trial court misconduct is claimed and the evidence concerning it is ambivalent, fundamental fairness requires an evidentiary hearing to precisely determine the facts.
I respectfully dissent.

APPENDIX A
(RECESS)
THE COURT: Court will come to order. Mr. Kidd, you asked me a minute ago where we were. Well, it saysand you were correct in saying that it was in the statementit did not say who was to supply it, however.
"There will be a pre-sentence investigation and I understand also that the federal investigation that's ongoing now will be made a part of the pre-sentence; that we will have a sentencing hearing." To that effect we are having and have had a sentencing hearing. As far as making the federal investigation that's ongoing now a part of the pre-sentence that is, as you heard on the phone, impossible because there is no ongoing federal investigation.
Now, did you hear the same thing that I heard on the phone? Mr. Coenen was on the other phone and you were on it. I spoke to Ken Robertson, he told me that there was an allegation and that a statement was taken but there was no ongoing, at this time, investigation.
MR. KIDD: I understand I'm in a minority, but may I appreciate my understanding of what Mr. Robertson said since we don't have it transcribed and it can be, hopefully, confirmed by Mr. Robertson because I believe he correctly stated what my appreciation was. May I state
THE COURT: Sure. I don't expect it to be anything at all like what I said. Go ahead.
MR. KIDD: For whatever reasons, my understanding of what Mr. Robertson said was that there was an original complaint made by Mr. Phillips.
THE COURT: He said by you.
MR. KIDD: By me, that's correct. And Mr. Phillips gave a statement that was taped that he talked to the U.S. Attorney and there is somethinghe talked about bureaucratic terminology, whatnotbut that the U.S. Attorney said that he did not want any investigation to interfere with any state court proceedings that were ongoing *523 at the time and that they had given some sort of hold status, as I appreciate it at that time.
And then he recalled a conversation that he had in Mr. Trailer's office with Mr. Coenen, but he said after that time that the New Orleans office had called and said that they wanted the matter resolved. That they wanted him to get back to Mr. Phillips for corroborative proof and to talk to Mr. Joles. That was my understanding from what was said.
Further, he talked to the Court in private
THE COURT: Before he did that there was something else that he said because I asked him the question, "Has in fact anyone gotten back to Mr. Phillips or whomever, to get the next statement?"
MR. KIDD: That's correct; he said there had not been. He said he was tied up with the Monroe prosecution case.
THE COURT: Whatever it was, right.
MR. KIDD: And he had not had the opportunity, but I construed that in my humble comprehension that the fact is that he had direction to get back with Mr. Phillips and Mr. Joles for possible cooperation. That that was ongoing. Apparently this court and Mr. Coenen have a different understanding of what ongoing
THE COURT: Well, I'm looking at the practical aspects of whether or not there was any information to put before the court. And since there has been no further information there is nothing else to put in front of the court except what Mr. Phillips said, which we already have of record, I think. Unless he told him something different than he told me under oath.
MR. KIDD: Judge, my point, and has been my point from the very beginning, and as this court reminded me
THE COURT: Wait. Answer that question to meand I didn't pose it as a questionbut I mean it to be. If there has been no one else asked anything about that investigation, no other questions have been asked, then there is no other information that can be placed before me at this time. Is that correct?
MR. KIDD: Judge, there was four hours of testimonyI mean four hours of statements
THE COURT: You're not answering my question.
MR. KIDD: I was trying to, Judge, if I may. I think that
THE COURT: I'm going to do you like you're on the stand; answer me yes or no and explain your answer.
MR. KIDD: I think that there can be, and I think the reason there can be simply is for matter of time that was spent forin an informal conversation where Mr. Robertson was saying, we need corroboration, can you think of things to corroborate, to lend credence to this. And that's what I'm talking about, not from a standpoint of detailing a greater thing than what was said. Because I think we went into even better detail with this court about resolving and reducing to a specified period of time than we did with Mr. Robertson.
But my point is this, and has been my point from the very beginning, because I was afraid of this. That there is a question of credibility as I explained to the Court. I'm not looking for anything from the federal investigator report other than corroboration. I happen to know that there are other investigations ongoing and I have a feeling that that's what Mr. Robertson was telling the Court about the two subject people. Now, I know that that's being done by another F.B.I. agent and I know that.
THE COURT: What does that have to do with this investigation?
MR. KIDD: It has to do with whether Mr. Phillips told this court the truth, only, Judge, only about that Motion to Suppress hearing. That's where I'm concerned about. That Motion to Suppress. Because my argument under motions that I previously made to this court, some of which were not heard, is a question of, is Rodger Phillips telling the truth, and if he is telling the truth, then was there a *524 plea agreement entered in between him and Mr. Loftin. And that is a fact that this courtthis is a Crosby plea and and the reviewing court will look, it will look to see; is this man just making wild allegations or is there some credence.
And what concerns me is not so much what this court said in its enunciation of the guidelines, but what that implies. That impliesand this is what disturbs methat implies that Mr. Phillips was not telling the truth in the Motion to Suppress hearing. And that is what bothers me, is that I can't separate the two. It doesn't bother me for purposes of the sentencing. It bothers me from the standpoint of whether or not the District Attorney's office should be recused, whether or not the Motion to Quash should be granted from the other reasons enunciated to this court. Because that's what I'm counting on; I'm not counting onI'm not worrying so much about the sentence as I am the
MR. COENEN: Your Honor, may I respond?
THE COURT: Wait, I want to hear this, this is getting
MR. KIDD: Judge, I hope the court can understand where I
THE COURT: I understand what you're saying.
MR. KIDD: And when this court says and you know, it didn't relateI know the court cannot remember who said what, but I remembered that Mr. Loftin was the one that labeled Mr. Phillips a con man. It was Mr. Loftin who filed the bill of information. Well, then when I put together what the court said about it took courage for the District Attorney to file the bill of information. Mr. Loftin said that he didn't want to take it to the Police Jury because he felt that Mr. Phillips might snow the Police Jury.
Well, if that is put into context of Mr. Phillips's Motion to Suppress hearing, then it sort of destroys the believability of Mr. Phillips at the Motion to Suppress hearing. That's what concerns me. Not from the standpointthe Court has every reason in the world to make its determination about whether Mr. Phillips is in fact a con man, whether in effect Mr. Phillips is in fact trying to snow the court, or these things. I don't argue with that, and I'm not objecting on that. I only object to what I thought I understood and as I told the Court before the hearing began, I was not concerned about having the physical federal pre-sentence, or federal investigation here as I was that this court believed that Rodger Phillips was telling the truth at the Motion to Suppress hearing. That's what my concern is.
MR. COENEN: Let me respond in about one minute.
THE COURT: Go ahead.
MR. COENEN: Mr. Kidd uses his abstract reason to get a continuance and that's all this is. Now, if the Court will remember at the Motion to Suppress hearing I asked this man directly, do you have any person, any documentary evidence or anything else to corroborate what you're saying about these men, and he said he did not. And he won't the next time anybody asks him a question.
MR. KIDD: Judge, you know it's very difficult for me. I am the person that gets demeaned, that is accused, that is called abating the court, and all of these things when I know things that occurred that cannot be introduced in this record. And to listen to that from a standpoint of five thousand dollar notes and all of this kind of garbage that's got no relevance here at all, and then I am the bad guy in these proceedings simply because I stand up for this young man here, rights for credibility. All I want before this Court is a chance for Rodger Phillips to be corroborated, nothing else.
THE COURT: Well, wait a minute, he's pled guilty to thirty counts of felony theft. All I want to do is sentence him. Okay.
MR. KIDD: Yes, sir.
THE COURT: Now, if you want to do your corroboration for some federal investigation *525 that right now is on "hold" or has not been active since the statement came down from whoever the boss was that told the man "put it on hold." I'm not interested in that investigation.
I took this case as a change of venue case on a theft that this man admitted doing. And I understand your position, believe me. You want me to say that I believed every word that he says or it will affect his credibility and therefore you won't be able to nail these fellows. That's fine.
MR. KIDD: Judge, that's not
THE COURT: Wait just a second. Or that the fact that if I say yes, I believe everything he says, he's nice, good and credible that means that he did actually have a plea bargain between the other district attorney at some earlier time. But the fact that I say, I don't believe every word he says, is knocking his credibility as to that first "so-called plea bargain."
All right. As I told you standing by that door over there, I believe what the man is saying about what he did. That's what I believe. Okay. And I told you it did not matter to me whether or not or where he gave the money, or who he gave it to, I don't care. That is not my interest. And that's not why I accepted this case. I'm not doing an investigation in that parish up there as to a judge, a D.A. or a priest, I don't care. I am only here on one case with this young man, of which he has pled guilty to thirty counts of felony theft.
Now, if you have a problem with the way I say what I say as far as his credibility, I am sorry. But as I said, I believe generally what the man told me. That doesn't mean that I believe every word that comes out of his mouth.
MR. KIDD: Judge, I have never asked that this court believe everything coming
THE COURT: All right, fine. So if you're not asking me to believe everything, we're at an agreement. I don't believe everything but I do believe what he said he did.
MR. KIDD: Judge, I am familiar with State versus Craig, and I understand that I have to enunciate and make very clear what I'm getting at, and apparently I have not done that. I still say the reason, the only
THE COURT: I'm going to do this to you. I understand your point, I disagree with it; I'm overruling your objection.
I made a statement out of anger a moment ago. I am apologizing, and I'll do this. I'm not going to delay the sentencing for thirty days. You insisted that there was an ongoing investigation. I had information there is no other information except what your client has told the F.B.I., or whoever he told. Now, that was the problem with sentencing him and that was your first objection because we didn't have the federal investigation in the pre-sentence. Now we find out that there is nothing to put in it.
Would you agree to that?
MR. KIDD: No, sir.
THE COURT: Well, I disagree with you and we'll just have to go to the First Circuit on that, because the federal investigator, or whoever Mr. Ken Robertson said, it was put on hold and no other information has been gained since regarding his allegations.
MR. KIDD: I am still denied due process by the fact
THE COURT: I'm sorry. Make your objection the First Circuit. Your objection is overruled at this point as to the reasons that you gave earlier about the federal investigation and for the record, there is no further information from the federal people, as stated on the phone with two other parties listening, including Mr. Kidd. If there is an investigation somewhere it's not from there.
MR. Phillips.
MR. KIDD: Judge, so that I may properly preserve
THE COURT: You have
*526 MR. KIDD: It's not objection now, it's a motion. And that is, since in effect this Court has said that I cannot make a part of thisand that affects Mr. Phillips's credibility as it relates to the Motion to Suppress hearing. I ask for the opportunity to move to withdraw my guilty plea because the State is not part of the plea bargaining that was entered into.
THE COURT: What is not a part of it?
MR. COENEN: I would object, it's not a part of the plea bargain.
MR. KIDD: As the Court has read
THE COURT: What is not a part of it?
MR. KIDD: That the federal investigationif it's nothingand of course, we've got a telephone conversation that I understand that the Court has stated its appreciation, it apparently has not been transcribed, I differ with what's said, but at least this Court could have had, or had the opportunity, or I had the opportunity, the Court gave me the opportunity for at least thirty days to get that from Mr. Robertson.
THE COURT: Well, I'm finished with it. I understand your objection. It's overruled.
MR. KIDD: To which I object.
[Emphasis added].
NOTES
[1] When defendant's counsel entered the guilty plea, he stated only that it was a "Crosby plea." In State v. Crosby, 338 So.2d 584 (La. 1976), the Louisiana Supreme Court determined that the court may review assignments of error specifically reserved at the time of the plea of guilty, where the trial court accepted the plea of guilty so conditioned. Id. at 588. (Emphasis added.) In this case, defendant had filed numerous pre-trial motions. From the record, it is impossible to determine on which of these pre-trial rulings defendant based his conditional plea. Although we review defendant's motions to suppress and to withdraw his guilty plea, we note that the trial court's action in accepting a non-specific "Crosby plea" is not strictly in compliance with State v. Crosby, supra.
[2] It is to be hoped that the trial court will make future arrangements of this type on the record, so that the terms of such agreement will be subject to review for compliance.
[3] We consider only the effect of the court's agreement to make a favorable determination of credibility. The original agreement, to admit the results of the "ongoing federal investigation" was satisfied; although the report was not admitted, it was not available.