492 So.2d 173 (1986)
STATE of Louisiana
v.
John Glass DICKINSON, III.
No. KA 85 1558.
Court of Appeal of Louisiana, First Circuit.
June 24, 1986.
Rehearing Denied August 20, 1986.
*174 Bryan Bush, Dist. Atty., Baton Rouge by Joseph N. Lotwick, Asst. Dist. Atty., for plaintiff-appellee.
J.J. McKernan, Baton Rouge, for defendant-appellant.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
John Glass Dickinson, III, was charged by a single grand jury indictment with one count of aggravated rape (LSA-R.S. 14:42); one count of attempted aggravated rape (LSA-R.S. 14:42; 14:27); two counts of armed robbery (LSA-R.S. 14:64); one count of aggravated burglary (LSA-R.S. 14:60); and one count of aggravated crime against nature (LSA-R.S. 14:89.1). Defendant filed motions to suppress his inculpatory statements, which were denied after extensive hearings.[1] On the first scheduled day of trial on the merits, defendant withdrew his plea of not guilty and pled guilty to one count of attempted aggravated rape and two counts of armed robbery, reserving the right to appeal the trial court's denial of the motion to suppress. State v. Crosby, 338 So.2d 584 (La.1976). The other charges pending against defendant were dismissed. The trial court sentenced defendant to a fifty year term of imprisonment at hard labor for the attempted aggravated rape conviction and a concurrent twenty-five year term of imprisonment at hard labor, without benefit of probation, parole or suspension of sentence on each armed robbery count.
On appeal defendant contends that the trial court erred by denying his motion to suppress any statements, confessions or admissions. Defendant argues that the trial court erred in denying his motion to *175 suppress because his inculpatory statements were the tainted product of an illegal detention and because the state failed to sustain its burden of demonstrating that such statements were voluntarily made.
On November 27, 1981, Louisiana authorities arrested John Barry Simonis, the "ski-mask rapist." According to the hearing testimony of then Louisiana State Police Detective Arnette Heintze, evidence gathered by a task force, including locating a red Trans Am automobile, identified Simonis as the main perpetrator of a series of armed robberies, burglaries and sexual assaults. Simonis was kept under surveillance in Lake Charles, Louisiana, for several days prior to his arrest. During that time, Simonis had substantial contact with defendant. At about 10:00 p.m., on the night of November 27, several hours after Simonis had been arrested, Louisiana State Police Detectives Heintze and Chargois, along with Detective Mixon of the East Baton Rouge Sheriff's Office, contacted defendant at his Lake Charles apartment. The three plainclothes officers knocked on defendant's door and identified themselves. Defendant was advised that Simonis had been arrested and that the officers wished to speak with him about his involvement with Simonis. Defendant consented to speak with the officers and invited them inside his apartment. Defendant was advised that he was not under arrest. As a precautionary measure, defendant was orally advised of his Miranda rights after he expressed a desire to answer the officers' questions. During this questioning, defendant made only exculpatory remarks. He also signed a search waiver, giving his consent to a search of his apartment. After the search had been conducted, during which no incriminating evidence was discovered, the officers asked defendant if he would follow them to Troop D Headquarters in Lake Charles and give physical samples to a technician for use in the officers' investigation. Anxious to "disassociate" himself from Simonis' criminal activities, defendant agreed. Defendant drove to Troop D Headquarters alone in his own vehicle.
After arriving at Troop D Headquarters, defendant, after being advised of his Miranda rights from a written form, signed a waiver. Defendant gave the physical samples and was asked if he would answer questions concerning his contacts with Simonis. Again it was made clear to defendant that he was not under arrest and that he was free to leave at any time.
The officers began questioning defendant about 1:00 a.m. on November 28, 1981. Detective Heintze indicated that defendant first incriminated himself at approximately 3:40 a.m., thereby providing the officers with probable cause to arrest him for an armed robbery committed with Simonis in Jennings, Louisiana, on September 6, 1981. The taped interview continued; and, at approximately 6:30 a.m., defendant was told that, based on his statements, he was under arrest for the Jennings armed robbery. Defendant was advised that he would be processed in Lake Charles and then transported to Jennings to be booked on the armed robbery charge. Aware that other law enforcement agencies were involved in investigations concerning Simonis, Detective Heintze requested that no one be allowed to talk with defendant, unless defendant requested an attorney or initiated the contact.
At approximately 11:00 p.m. that night, Heintze and Chargois contacted defendant at the Jennings jail. After ascertaining that defendant had slept and eaten, the officers conducted an additional interview with defendant. Again, defendant was given his Miranda rights and signed a waiver of rights form. At approximately 3:00 a.m., Hillar Moore of the East Baton Rouge Parish District Attorney's Office arrived in Jennings with video taping equipment. Defendant was again advised of his Miranda rights on video tape. The video taped interview concluded at approximately 5:30 a.m. During that interview, defendant revealed his involvement in the instant charges. These charges arise from an armed robbery and varied sexual assaults upon members of a household in East Baton *176 Rouge Parish undertaken by defendant and Simonis in June of 1981.[2]
Detectives Heintze and Chargois testified during the various pre-trial hearings that defendant was not threatened, abused, induced, or instructed to make any statement referenced above, that defendant was alert, and that defendant did not want to contact an attorney or make a telephone call.
Defendant chose to testify at a hearing on the motion to suppress. His version of the officers' contact with him differs dramatically from the officers' version. Defendant maintains that the three officers forced their way into his apartment, disconnected his telephone, and proceeded to physically abuse him. Defendant was exhausted and frightened when the officers advised him that he and Simonis were the "ski-mask rapists." On cross-examination, defendant revealed that his inculpatory statements, recorded on the audio and video tapes, were untrue, and that he had been coached on what to say by the officers prior to the tapings.
In oral reasons assigned for denying the motion to suppress, the trial court noted that there are substantial and serious differences between the version of events given by Detectives Heintze and Chargois and that given by defendant. The trial court observed the appearance and demeanor of the parties, accepting as credible the testimony of the law enforcement officers and rejecting as unworthy of belief the testimony of defendant. The factual conclusions of a trial court on the admissibility of a confession will not be overturned on appeal unless they are not supported by the evidence. State v. Nathan, 444 So.2d 231 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1232 (La.1984). We have carefully reviewed the record, and find that the trial court's ruling not to suppress the confession is supported by the record.
The first issue in this case is whether defendant was illegally detained when Detectives Heintze, Chargois, and Mixon arrived at his home. It is conceded by the state that the police lacked probable cause to arrest defendant prior to his incriminating statement made during the early morning questioning of November 28, 1981. Whether a person has been taken into custody, detained or deprived of his freedom in a significant way must be decided by an objective test. State v. Thibodeaux, 414 So.2d 366 (La.1982). Defendant's subjective impression is not determinative of the issue of his claimed illegal detention. Rather, all the circumstances surrounding defendant's questioning and transportation to the Troop D Headquarters should be evaluated. See State v. Thibodeaux, 414 So.2d at 368.
In the instant case, defendant was approached by three plainclothes police officers at his home. Defendant was advised of the reason for their request to speak with him before he invited the officers inside. Defendant was given his constitutional rights and consented to a search of his apartment. When physical samples were needed to supplement the investigation, defendant agreed to travel to Troop D Headquarters. Defendant drove to the police station in his own vehicle. At the police station, defendant was again advised of his Miranda rights and at that time signed the first of several written waiver of rights forms. After submitting physical samples, defendant agreed to continue the questioning as he was most anxious to disassociate himself from Simonis. Defendant was specifically told that he did not have to travel to the police station and that he was not under arrest. Defendant remained free to leave at any time prior to his having admitted that he participated in one of Simonis' many criminal acts.
The totality of the circumstances, when viewed objectively, indicates that defendant accompanied the officers to the police station and agreed to speak with them voluntarily in a spirit of apparent cooperation. Nothing in the record suggests that defendant had any objective reason to believe *177 that he was not free to end his conversation with the officers prior to his having incriminated himself. Under these circumstances, defendant's statements were not the product of an illegal arrest or detention.
As an alternative basis for his argument, defendant suggests that resolution of this issue be based solely on a brief portion of the exchange between Detective Heintze and the prosecutor during which Detective Heintze stated he had arrested defendant at his apartment in Lake Charles on November 27th. The relevant exchange continued, however, with Detective Heintze immediately correcting himself. He stated that, in fact, defendant had not been arrested until November 28th, although they first met at defendant's apartment on November 27th. This single reference made by a police officer some three years after the incident does not undercut the determination that defendant had not been deprived of his freedom of action in a significant way before the officers had probable cause to arrest him.
The second portion of defendant's argument concerns the voluntariness of his confession. Defendant's argument assumes a factual scenario consistent with his testimony at the hearing on the motion to suppress which he attempts to buttress by expert testimony as to his alleged mental incompetence.
The state has the burden of proving the admissibility of a confession beyond a reasonable doubt. La.C.Cr.P. art. 703(D); State v. Burkhalter, 428 So.2d 449 (La. 1983). In addition, when a defendant alleges police misconduct in reference to a confession, the state must specifically rebut such allegations. State v. Welch, 448 So.2d 705 (La.App. 1st Cir.), writ denied, 450 So.2d 952 (La.1984).
As noted above, the factual differences as to the relevant series of events was resolved by the trial court in favor of the state's witnesses. Such a determination is supported by the evidence and shows beyond a reasonable doubt that defendant was properly advised of his constitutional rights, that the confession was given freely and voluntarily and not induced by threats, promises or coercion, and that the alleged police misconduct did not occur.
With regard to the relationship between diminished mental or intellectual capacity and involuntariness, the Louisiana Supreme Court has noted that such a condition does not of itself vitiate the ability to knowingly and intelligently waive constitutional rights and to make freely and voluntarily a confession. State v. Benoit, 440 So.2d 129 (La. 1983). The critical factors are whether the defendant was able to understand the rights explained to him and whether he voluntarily gave a statement. State v. Benoit, 440 So.2d at 131.
The record reveals that the defense experts examined defendant briefly some three and one-half years after defendant's statements to the police. Dr. Marc Zimmerman, a clinical psychologist, observed that defendant, a graduate pharmacist, presents himself as a very competent person. He opined, however, that because of defendant's low ego strength he would be easily led by one in authority. Dr. Krishna Yalamanchili, a psychiatrist, observed that defendant was suffering from major depression. He candidly admitted that he could not describe defendant's condition on the weekend when he was arrested.
Undermining the testimony of defense experts is the fact that the account of defendant's encounter with the police, which served as the basis for the doctors' professional opinions, was derived from defendant. It is obvious from the trial court's ruling that it did not place much weight on the account of events given by defendant during his testimony. Accordingly, it would follow that expert testimony based on such a factual scenario would also fail to be afforded much weight.
Defendant was observed as rational and coherent at the time of his confession. This observation by the testifying police officers is buttressed by defendant's appearance during his video taped statements. *178 Thus, the state's evidence provided a sufficient basis for the trial court's conclusion that defendant was rational, coherent and able to comprehend the meaning and significance of his confession, and knowingly waived his constitutional rights.
For the foregoing reasons, this assignment of error is without merit.
AFFIRMED.
NOTES
[1] Defendant's initial motion to suppress was filed on April 1, 1982, during the time when he was represented by his first court-appointed counsel. That motion was denied on December 10, 1982. On motion of defendant, following a Faretta hearing (Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)), the trial court ordered that defendant be allowed to represent himself and current counsel was appointed to aid and assist defendant. Thereafter, defendant's second motion to suppress was filed on October 7, 1983. After extensive hearings, that motion was denied on July 31, 1985. A third motion to suppress was filed on the first scheduled day of trial, October 14, 1985. Therein defendant reurged the motion on the same basis urged in his second motion to suppress. Having previously considered all relevant issues, the trial court reiterated its denial of defendant's motion.
[2] A third taped interview was conducted on December 1, 1981. No new inculpatory statements relevant to the instant charges resulted from that interview.