FORET, Judge.
Defendant, Allen Keith Guidry, was charged with possession of stolen things, in violation of La.R.S. 14:69. On April 6, 1987, a preliminary examination and a motion to suppress hearing were held. Defendant’s motion to suppress inculpatory statements was granted. The State now seeks review of that ruling by writ of cer-tiorari and assigns the following assignment of error:
1. The trial court erred in granting defendant’s motion to suppress the evidence.
We granted this writ to consider the correctness of the trial court’s ruling.
FACTS
Detective Mike Ebow of the Jennings Police Department was investigating a November 21, 1986 burglary at the community action center in Jennings. The police department placed a crime stopper ad in the local newspaper and, on November 25, 1986, Ebow received a phone call from a witness, Ted Braxton. Braxton, who lives behind the center, told Ebow that he saw a car parked on the road by his house and he wrote down the license plate number. Braxton also told Ebow that he knew the owner of the vehicle, and he identified the defendant as being one of the subjects coming out of the car and walking through a field to the community action center. Braxton told Ebow he saw the men walking back to the car carrying large boxes. After receiving this information, Ebow and Sergeant Betty Leblanc proceeded to defendant’s residence. The officers asked defendant if he would like to come down to the station for questioning and defendant agreed. Upon his arrival at the station, Ebow advised Guidry of his Miranda warnings and began questioning him about his whereabouts on the night of the burglary. Defendant denied any involvement in the burglary and said he was home all night watching television. After this initial questioning, the two officers did further investigating and discovered that defendant was not telling the truth. The officers returned to the station where the defendant was detained and advised him that he was under arrest for possession of stolen property-
ASSIGNMENT OF ERROR NO. 1
By this assignment of error, the State argues that the trial court erred in granting the defendant’s motion to suppress in-culpatory statements. Specifically, the State contends that the trial court erred in determining that the defendant was illegally arrested at the time the police officers came to his house. The State contends *1141 that defendant volunteered to go to the station for questioning.
The defendant, in urging the motion to suppress, argued that he was illegally arrested at his house and any inculpatory statements he gave to the police were inadmissible under the “fruit of the poisonous tree” doctrine annunciated in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
The defendant maintained that he was illegally arrested at his house because there was no arrest warrant.
Absent exigent circumstances, the Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution of 1974 prohibit the police from making a warrantless or non-consensual entry into a suspect’s home to make a routine felony arrest even if probable cause to arrest exists. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); State v. Johnson, 407 So.2d 673 (La.1981).
An “arrest” occurs when circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells the accused he is under arrest. State v. Raheem, 464 So.2d 293 (La.1985).
Whether a person has been taken into custody, detained or deprived of his freedom in a significant way must be decided by an objective test. State v. Thibo-deaux, 414 So.2d 366 (La.1982). Neither the defendant’s subjective impression nor the formality of an official arrest will be determinative of the issue of his claim to illegal detention. State v. Menne, 380 So.2d 14 (La.1980). Rather, all of the circumstances surrounding the defendant’s transportation to the station house and questioning should be evaluated. Thibodeaux, supra.
A review of the jurisprudence and the circumstances in this case reveals that the defendant was not arrested at his house after all.
In Menne, supra, the Supreme Court suppressed Menne’s confession. There, the defendant was called on the phone and asked to come to the police station for an interview. The defendant was interviewed by two officers for an hour. The officers told Menne that he was the last person with the murder weapon before the victim’s death and that they believed he knew more about the crime than he revealed. The defendant then admitted the crime and then he was advised of his rights. The Louisiana Supreme Court held that constitutional warnings must be given whenever the circumstances reasonably indicate that the defendant has been deprived of his freedom in any significant way.
In Thibodeaux, supra, the Supreme Court distinguished Menne. In Thibo-deaux, a detective received a call from an anonymous confidential informant stating that defendant had burglarized a gas station a few days earlier. Acting on this tip, police officers went to defendant’s residence in plain clothes and in an unidentified car. The officers identified themselves to defendant and told him that they were investigating the burglary at the gas station. They advised him of his Miranda rights and asked him if he would come to the police station for questioning. The detective testified that he did not go to defendant’s house with the intention of arresting him, but he wanted to bring him to the station because he anticipated an extended interrogation and he wanted access to police reports. The court found that, applying the totality of the circumstances, the defendant voluntarily accompanied the police to the station and there was no illegal arrest.
In State v. Copeland, 419 So.2d 899 (La.1982), the defendant was asked to come to the police station to help with a missing persons investigation. Defendant agreed to come and was not under arrest or handcuffed at that time. Defendant was read his rights before being interviewed. After thirty or forty minutes of questioning, when the police officer became suspicious that defendant knew more about the crime than he had revealed, the officer had defendant execute a formal written waiver of rights form. The court stated:
*1142 ... “At no time did defendant ask to have an attorney or refuse to answer questions. Therefore the proper procedural safeguards, as established by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), for custodial interrogation of a defendant, were properly used in the case at bar, even assuming that defendant was ‘in custody’ at the time the questioning took place.
[[Image here]]
However, defendant fails to consider the testimony, which remains unrefuted, that he voluntarily went to the police substation.”
In State v. Dickinson, 492 So.2d 173 (La.App. 1 Cir.1986), writ denied, 498 So.2d 14 (La.1986), the court ruled that under the totality of circumstances, viewed objectively, the defendant accompanied the officers to the police station and agreed to speak with them voluntarily in a spirit of apparent cooperation. In Dickinson, the defendant was approached by three plainclothes police officers at his home and was advised of the reason for their request to speak with him before he invited the officers inside his horneé Defendant was advised of his Miranda warnings. He consented to traveling to police headquarters (in his own vehicle) to submit to physical samples to supplement the investigation. At the police station, defendant was again advised of his Miranda warnings and agreed to answer questions. Defendant was specifically told that he did not have to travel to the police station and that he was not under arrest.
In the case at bar, the record reveals that both Detective Ebow and defendant Guidry testified that defendant volunteered to go to the police station.
Ebow testified:
“Q. Did he agree to come down to the station for questioning?
A. Yes, he did.
Q. And upon his arrival at the station, what happened?
A. I advised him of his Miranda warnings and I began questioning about his whereabouts on Friday, November 21.”
Defendant testified:
“Q. You mentioned that Ebow stuck his head in and asked you if you would go down to the station, that he wanted to ask you some questions.
A. Yes. I remember that well.
Q. And did you go with him to the station?
A. Yes, I did.
Q. And did he have you in handcuffs or
[[Image here]]
A. No he didn’t.
Q. And when he asked you if you wanted to come down to the station to answer some questions, you were agreeable. You volunteered to go down to the station and answer some questions?
A. Yes, I did.”
Defendant argued in the motion to suppress that the police officers intended to arrest him when they came to his house. Ebow testified, however, that no decision was made before he was picked up to arrest him and that he was arrested after questioning.
Based on the totality of circumstances and the evidence, it appears from the record that defendant voluntarily went to the police station for questioning. He was not handcuffed, and he was advised of his rights. He was arrested after questioning and again advised of his rights. The trial court erred in sustaining defendant’s motion to suppress.
DECREE
For the foregoing reasons, the writ is made peremptory. . The judgment of the trial court granting defendant’s motion to suppress is reversed, and the matter is remanded to the trial court for further proceedings.
REVERSED.